# DYKEMA

Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606

WWW.DYKEMA.COM

Tel:  (312) 876-1700
Fax:  (312) 876-1155

**RICHARD E. GOTTLIEB**
Direct Dial: 312.627.2196
Direct Fax: 312.627.2302
Email: rgottlieb@dykema.com

**VIA HAND DELIVERY**

June 9, 2008

Honorable Naomi Reice Buchwald
United States District Court
Southern District of New York
2270 United States Courthouse
500 Pearl Street
New York, NY 10007

Re: ***Tombers v. Indymac,*** **Case No. 08 CV 5068**

Dear Judge Buchwald:

Undersigned counsel represents the defendant, Indymac Bank, F.S.B. ("Indymac"), in the above-referenced litigation. I am admitted to practice in New York and before this Court.

We submit this letter for two purposes: (1) to request a conference with the Court in order to seek the Court's permission to move to dismiss the Complaint against Indymac, pursuant to Fed. R. Civ. P. 12(b)(6); and (2) to respond to the letter Plaintiff's counsel submitted to the Court on June 5, 2008, with respect to the subject matter jurisdiction of this Court.

**I.      Indymac Respectfully Requests Permission to File a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6).**

Plaintiff, Mathew J. Tombers ("Plaintiff"), alleges in his Complaint that Indymac violated NY Real Property Law § 274-a[2](a) and NY General Business Law § 349(a) by charging him a $20.00 "Fax/Quote" fee for providing him a payoff statement for his mortgage. *See* Compl., ¶¶ 1, 13, 16. The cited New York real property provision authorizes a charge of up to $20 for a fax payoff but requires that the first payoff be provided at no charge. Plaintiff also claims that Indymac was unjustly enriched by charging the fee. *Id.*, ¶ 20. Plaintiff seeks, for himself and for the putative class he represents: (1) compensatory damages, (2) costs and expenses of the litigation, including attorneys' fees; (3) a preliminary and permanent injunction; and (4) such other and further relief as the Court deems just and equitable. *Id.* at 5-6. But Plaintiff's claims (which rely exclusively on the mere assessment of the $20.00 fee) are, as shown below, preempted by federal law.

CALIFORNIA | ILLINOIS | MICHIGAN | TEXAS | WASHINGTON D.C.

Hon. Naomi Reice Buchwald
June 9, 2008
Page 2

Indymac is a federal savings bank. As such, Indymac's banking practices are regulated exclusively by the federal Office of Thrift Supervision (OTS) and its implementing regulations. *See* Home Owners Loan Act ("HOLA"), §§ 4(a)(2) and 5(a)(1), 12 U.S.C. §§ 1463(a)(2), 1464(a)(1). For nearly two centuries, Congress has expressed its intent to create a federal banking system that is governed by far-reaching federal regulations. As one federal court of appeals recently recognized:

> Congress has legislated in the field of banking from the days of *McCulloch v. Maryland*, 17 U.S. 316, 325-26 (1819), creating an extensive federal statutory and regulatory scheme . . . . Indeed, since the passage of the National Bank Act in 1864, the federal presence in banking has been significant. Similarly, since the passage of the [HOLA] in 1933, OTS regulations have governed the "powers and operations of every federal savings and loan association from its cradle to its corporate grave." [*Fidelity Fed. Sav. & Loan Ass'n v.] de la Cuesta*, 458 U.S. 141, 145 (1982).

*Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) (citations omitted). Consistent with the broad and exclusive federal oversight of the national banking system, Congress delegated to OTS the authority to regulate the lending-related practices of federal savings associations and to preempt state laws affecting their operation. *See* Section 5(a) of HOLA, 12 U.S.C. § 1464(a); *see also de la Cuesta*, 458 U.S. at 161-162.

The OTS regulations, in turn, specifically provide that "[p]ursuant to sections 4(a) and 5(a) of the HOLA, OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations . . . [f]or purposes of this section, state law includes any state statute, regulation, ruling, order or judicial decision" including, but not limited to "[l]oan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees." Section 560.2(b)(5).

According to both the OTS and case law interpreting such charges, (1) a "fax/quote fee," charged by a federal savings association in connection with a mortgage loan, is a "loan-related fee" that is subject to federal preemption, and (2) "to the extent § 274-a(2) would prohibit [an entity regulated by the OTS] from charging a borrower for faxing a loan payoff statement requested by the borrower, § 274-a(2) does not apply to the Association." *See* OTS Opinion Letter, 2000 OTS Op., No. P-2000-6 (Apr. 21, 2000) (attached as Exhibit A). The decision in *Moskowitz v. Wash. Mut. Bank, F.A*, 329 Ill. App. 3d 144, 768 N.E.2d 262 (Ill. App. 2002)(attached as Exhibit B), is on point. In *Moskowitz*, the court relied on the OTS opinion, which states that "the fee charged for faxing a payoff statement is a loan-related fee [within the meaning of OTS regulations]," in ruling that inconsistent state law is preempted by HOLA. *Id.* at 149, 265. The *Moskowitz* court noted that:

**DYKEMA**

Hon. Naomi Reice Buchwald
June 9, 2008
Page 3

> [T]he OTS has determined that the payoff statement is integral to the lending process and that payoff statement fees are loan-related fees with in the meaning of section 560.2 of the OTS regulations. Therefore, federal law preempts [Illinois state law] to the extent it is used to regulate an association's imposition of payoff statement fees.

*Id.* The same analysis applies here. Plaintiff's allegations arise exclusively out of Indymac's "fax/quote fee" and, as such, are preempted.

## II.    Indymac's Response to Plaintiff's Counsel's June 5, 2008 Letter

Simply stated, and as explained in detail below, removal here is proper. Furthermore, because Indymac is not in default, Plaintiff's arguments regarding Indymac's request for an extension are improper.

### A.    This Lawsuit Meets Diversity Jurisdiction Requirements.

Plaintiff argues that this Court does not have diversity jurisdiction over this matter because the amount in controversy does not exceed $75,000, and because 28 U.S.C. § 1332(d), enacted with the Class Action Fairness Act of 2005 ("CAFA"), requires a $5 million amount in controversy for class actions. *See* Plaintiff's Letter at 2-3. Plaintiff's arguments are without merit.

Addressing the CAFA issue first, Indymac did not seek removal under the CAFA provision, but rather under the general diversity jurisdiction statute. Under 28 U.S.C. § 1332(a), federal jurisdiction exists over "all civil actions" in which the amount in controversy is over $75,000 and the citizenship of the parties is diverse. In *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005), a case decided after CAFA, the Supreme Court held that diversity jurisdiction may exist over class actions that otherwise cannot be removed under CAFA. Under *Exxon Mobil*, as long as at least one named plaintiff in a class action can satisfy the amount-in-controversy requirement, federal jurisdiction exists over the class action regardless of whether the class action could have been removed under CAFA. *See id.* at 559, 571-72 (holding that diversityl jurisdiction exists where one plaintiff or claim satisfies the amount-in-controversy requirement in multi-plaintiff actions or class actions, and CAFA has "no bearing" on the Court's analysis). Therefore, regardless of whether the alleged damages sought by Plaintiff and the class here are under $5,000,000, removal is proper because Plaintiff seeks more than $75,000. Therefore, the only question before the Court is whether the parties are diverse, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff does not challenge diversity of citizenship but alleges that the $75,000 threshold is not met in this case.

1.    **Plaintiff seeks attorneys' fees that are recoverable by statute.** In a conspicuous omission, Plaintiff's Letter does not argue that he will likely incur and therefore be seeking attorneys' fees less than the amount necessary to meet the jurisdictional threshold, *i.e.*, $74,980 ($75,000 minus the $20 fax fee reimbursement Plaintiff is seeking). Under N.Y. Gen. Bus Law §

**DYKEMA**

Hon. Naomi Reice Buchwald
June 9, 2008
Page 4

349(h), a successful plaintiff may recover such reasonable fees, and attorneys' fees may plainly be used to establish the amount in controversy requirement. *See Gardiner Stone Hunter Int'l v. Iberia Lineas Aereas De Espana, S.A.*, 896 F. Supp. 125, 128 (S.D.N.Y. 1995) ("A potential award of attorney's fees may be considered by the court when determining whether a case involves the jurisdictional minimum.") (holding that jurisdictional minimum was met in case alleging violations of N.Y. Gen. Bus. Law § 349); *accord, In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp. 2d 740, 755-56 (E.D.N.Y. 2001). Applying a reasonableness standard to this analysis (*Gardiner Stone Hunter*, 896 F. Supp. at 128), it is reasonable to estimate that attorneys' fees will exceed $75,000 here, and (in any response to a remand motion), Indymac is prepared to establish that fact. *See, e.g., Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) (noting that, according to a study done by the Federal Judicial Center, the median percentage recovery range for attorneys' fees was 27-30% for all class actions resolved or settled over a four-year period). Therefore, removal is proper in this case on the basis of attorneys' fees alone.[1]

    **2.**    **Plaintiff has *not* disavowed punitive damages in his complaint.** In addition, Plaintiff argues that, because he is not *specifically* seeking punitive damages in his complaint, punitive damages should be taken out of consideration with regard to the amount in controversy. Letter at 2. While Plaintiff does not specifically use the words "punitive damages" in his complaint, he does seek such "other and further relief as the Court deems just an equitable." Compl., *ad damnum*, at 6. Punitive damages are potentially recoverable under Section 349(a) of the New York General Business Law. That said, if Plaintiff is willing to stipulate that he will not seek punitive damages, then Indymac will not assert the request for punitive damages as a separate or aggregating basis for removal.

    **3.**    **The requested injunctive relief exceeds $75,000.** Finally, Plaintiff argues that the injunctive relief sought by Plaintiff -- to permanently enjoin Indymac from charging "Fax/Quote" fees to any New York borrowers -- cannot satisfy the amount-in-controversy requirement, citing *Kings Choice Neckwear, Inc. v. DHL Airways, Inc.*, No. 02 Civ. 9580 (GEL), 2003 U.S. Dist. LEXIS 17507 (S.D.N.Y. Oct. 1, 2003). *See* Plaintiff's Letter at 2. Plaintiff fails to acknowledge that the Second Circuit, as well as courts within this District and sister districts, have calculated the potential harm associated with injunctive relief sought in order to satisfy the amount-in-controversy requirement.

    As a threshold matter, *Kings Choice* is readily distinguishable. Unlike that case, the injunctive relief Plaintiff seeks here does not rest on whether a class is certified. Plaintiff is not seeking to enjoin Indymac from charging "Fax/Quote fees" only with respect to Plaintiff himself or even with respect to the class. Rather, the entire object of Plaintiff's suit -- that is, the very benefit Plaintiff seeks -- is to forever enjoin Indymac from charging *anyone in New York* a

---

[1] Of course, if Plaintiff agrees to stipulate that he will not seek attorneys' fees in excess of $74,980, then certainly attorneys' fees alone will not satisfy the amount-in-controversy requirement, and Indymac will withdraw its argument to the contrary.



Hon. Naomi Reice Buchwald
June 9, 2008
Page 5

"Fax/Quote fee." *See* Complaint, at 6 (paragraph D of *ad damnum*). The benefit to Plaintiff in this case is equal to the cost to Indymac. *See Katz v. Warner-Lambert Co.*, 9 F. Supp. 2d 363, 365 (S.D.N.Y. 1998) (measuring the amount in controversy in a class action seeking injunctive relief as cost to defendant where benefit to the plaintiff was the same cost). This is the case regardless of the relief Plaintiff seeks for the class (*i.e.*, reimbursement of the fees). The class-wide relief and the injunctive relief are mutually exclusive. *See id.* (denying motion to remand in class action where the injunctive relief sought by plaintiff would have been undertaken regardless of whether the suit was a class action or the number of members in class).

Furthermore, the *Kings Choice* court expressly recognized contrary authority with respect to the measure of requested injunctive relief. 2003 U.S. Dist. LEXIS 17507, at *15 n. 4 (citing *Mortgageit, Inc., v. Wallberg*, No. 02 Civ. 5911 (JSM), 2002 U.S. Dist. LEXIS 19681 (S.D.N.Y. Oct. 16, 2002)). *Mortgageit* held that "[w]hile the value of the interest Plaintiff seeks to protect may be one appropriate measure of the amount in controversy, it is also appropriate to consider the loss to the Defendant that would result if the injunction was granted." *Mortgageit*, 2002 U.S. Dist. LEXIS 19681, at *1 (citing *Kheel v. Port Authority of New York*, 457 F.2d 46, 49 (2d Cir. 1972); *Katz*, 9 F. Supp. 2d at 365). *See also Katz*, 9 F. Supp. 2d at 365 (evaluating the cost to the defendant of the injunctive relief in order to determine the amount in controversy in class action); *Steinberg v. Nationwide Mut. Ins. Co.*, 91 F. Supp. 2d 540, 544 (E.D.N.Y. 2000) (denying motion to remand in class action where court measured value of injunctive relief by amount of potential harm to defendant, relying on *A.F.A. Tours, Inc. v. Whitchurch*, 937 F.2d 82, 87-88 (2d Cir. 1991)); *Hubbard v. GMC*, No. 95 Civ. 4362 (AGS), 1996 U.S. Dist. LEXIS 6974, at *7 (S.D.N.Y. May 22, 1996) ("the class action plaintiffs had a common and undivided interest in the injunctive relief sought because in a suit for injunctive or declaratory relief, the amount in controversy is measured by the value of the object of the litigation") (citation and quotation marks omitted).

The Second Circuit, while recognizing the plaintiff's viewpoint as to the amount in controversy, looks to the potential harm and the extent of the impairment to be prevented by the injunction. *A.F.A. Tours*, 937 F.2d at 87-88 ("Where the plaintiff seeks injunctive relief, the value of his claim is generally assessed with reference to the right he seeks to protect and *measured by the extent of the impairment to be prevented by the injunction*. In calculating that impairment, the court may look not only at past losses *but also at potential harm*.") (emphasis added) (citations omitted). *See also Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477, 483 (S.D.N.Y. 2003) ("[T]he value of the suit's intended benefit or the value of the right being affected or the injury being averted constitutes the amount in controversy when damages are not requested.") (citation and quotation marks omitted) (analyzing the "extent of injury to be prevented" in denying motion to remand where injunctive relief would have harmed defendant enough to push amount in controversy over $75,000).

In sum, the "extent of the impairment to be prevented by the injunction" exceeds $75,000, and the amount-in-controversy requirement is satisfied as a result of the injunction alone.



Hon. Naomi Reice Buchwald
June 9, 2008
Page 6

**B.    Removal Is Likewise Proper Because HOLA Completely Preempts Plaintiff's Claims.**

Plaintiff also argues that his case is not subject to complete preemption, citing a district court case as "authoritative." Plaintiff's Letter at 3 (citing *Jacobs v. ABN-Amro Bank, N.V.*, No. 03-CV-4125 (NGG), 2004 U.S. Dist. LEXIS 6888 (E.D.N.Y. Apr. 21, 2004). Of course, *Jacobs* is not binding precedent, as it is a district court opinion from a different district. Furthermore, while *Jacobs* did deal with the issue of fax fees, *it did not deal with an entity regulated under the Home Owners Loan Act*. Likewise, Plaintiff's cite to *Kings Choice* in his preemption discussion is puzzling because the defendant in that case argued that the plaintiff's claims were completely preempted by a different statute, the Airline Deregulation Act, which is not even an issue in this case. Therefore, *Kings Choice* offers nothing to the discussion of whether HOLA completely preempts Plaintiff's claims here. Indeed, Plaintiff does not cite a single case that has ever rejected the claim that HOLA does not completely preempt allegations of improper fax fee charges by a federal savings bank. As noted in the removal papers, under *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003), the Supreme Court affirmed complete preemption as applied to national banks under the National Bank Act, and HOLA preemption for federal savings banks is arguably broader. As the Supreme Court has stated, "[i]t would have been difficult for Congress to give the [OTS] a broader mandate." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 161 (1982) (citation and quotation marks omitted). *See also id.* at 145 (OTS regulations govern "the powers and operations of every Federal savings and loan association from its cradle to its corporate grave.") (citation and quotation marks omitted). In short, complete preemption provides another basis for removal here.

**C.    Indymac Is Not in Default.**

Plaintiff is also incorrect when he argues that Indymac is presently in default and that Plaintiff's motion for order of default in state court is pending. *See* Letter at 1-2. Plaintiff's chronology is wrong. According to Indymac records, Indymac has no record of service until receipt of Plaintiff's Complaint *from Plaintiff's counsel* via overnight courier on May 6, 2008. Therefore, Indymac was not in default on the date it removed this action. Indymac recognizes that Plaintiff has submitted evidence of personal service in New York on May 5, but itself has no record of such service other than Plaintiff's statements to that effect.

In any event, even if Plaintiff were to attempt to proceed with the motion, no default has been entered by the Supreme Court, and this Court has already granted Indymac's letter application for an extension to respond to Plaintiff's complaint. Furthermore, the federal rules granted Indymac not less than five additional days to answer or respond to the Complaint upon removal (Fed. R. Civ. P. 81(c)), and the ruling on Indymac's motion for enlargement postponed the response date on that filing.

# DYKEMA

Hon. Naomi Reice Buchwald
June 9, 2008
Page 7

Respectfully submitted,

**DYKEMA GOSSETT PLLC**

Richard E. Gottlieb

REG/st

cc:　　All Counsel of Record

CHICAGO\2456643.3
ID\RLZ

**Date:** April 21, 2000

**<u>State Law Limiting Payoff Statement Fees</u>**

Federal law preempts the application to a federal savings association of provisions of a New York law that limits the imposition of fees for providing mortgage loan payoff statements.

**Subject:** Home Owners' Loan Act/Savings Association Powers.

**P-2000-6**





**Office of Thrift Supervision**
Department of the Treasury

**P-2000-6**

*Chief Counsel*

1700 G Street, N.W., Washington, DC 20552 • (202) 906-6251

April 21, 2000

[

]

**Re: State Law Limiting Payoff Statement Fees**

Dear [          ]:

      This responds to your inquiry submitted on behalf of [
    ] ("Association") located in [                    ].  You request that
the Office of Thrift Supervision ("OTS") confirm your conclusion that federal law
preempts the application of provisions of a New York law that limits the imposition of
fees for providing mortgage loan payoff statements.  In brief, we conclude that federal
law preempts application of the New York law to the Association.

      The Association engages in residential mortgage lending.  You indicate that upon
request, the Association will prepare and provide its residential mortgage loan borrowers
with loan payoff statements showing the balance owed on their mortgage loans, including
principal and accrued interest as of a specific date, and the per diem interest charges
accruing after such date.  If the borrower requests that the payoff statement be prepared
and sent by fax, the Association charges a fee of $[  ]; otherwise the Association will
prepare and mail the payoff statement to the borrower free of charge.

      You have provided us with a copy of § 274-a of the New York Real Property
Law.[1]  Section 274-a(2) requires that under certain circumstances, the mortgagee of
certain residential real property deliver within 30 days of a "bona fide written demand"
certain "mortgage-related documents," defined to include a loan payoff statement to an
authorized individual.[2]  Section 274-a(2) also prohibits the mortgagee from charging

---

[1] N.Y. Real Prop. Law 274-a (Consol. 1999).

[2] Section 274-a(2)(b)(iii) defines "bona fide written demand" as "a written demand made by an authorized individual in
connection with a sale or refinancing of the mortgaged property or some other event where the mortgage is reasonably
expected to be paid off or assigned."  The term "mortgagee" is defined to include banking institutions chartered or licensed
by the United States.

2

borrowers for the mortgage-related documents pursuant to an initial request, but a mortgagee "may charge not more than twenty dollars, or such amount as may be fixed by the banking board, for each <u>subsequent</u> payoff statement provided . . . ." (Emphasis added.)

While it is not entirely clear from the face of the statute that it would bar charging for the service of faxing a payoff statement to a borrower,[3] you advised us that a recent New York state court decision indicates that such a charge would be barred. On November 5, 1999, a New York state appellate court found that a borrower who alleged that a mortgagee charged a fax fee to provide a payoff statement to borrower upon an oral request stated a cause of action for violation of §274-a(2).[4] The court allowed the borrower to proceed with a cause of action challenging the imposition of the fee by the lender. You are concerned that the Association might be found liable for its practice and ask whether the limitation on charging fees in §274-a(2) applies to the Association.

OTS regulations are clear that federal law preempts state laws that restrict loan-related fees. Section 560.2(b)(5) expressly provides that state laws purporting to impose requirements regarding loan-related fees are preempted.[5] On numerous prior occasions, the OTS and its predecessor agency have interpreted and applied § 560.2(b)(5) in the context of state laws restricting particular types of fees.[6]

Here, the fee the Association charges for faxing loan payoff statements, at the borrower's request, is a loan-related fee. The Association charges this fee for providing its loan customers the convenience of rapid receipt of a payoff statement containing information concerning all outstanding amounts on, and the payoff value of, their loans.[7] The payoff statement is an integral part of the lending process as it provides the information necessary to satisfy the debt and extinguish the extension of credit.

---

[3] Discussions with a legal representative in the New York Banking Department concerning § 274-a(2) did not clarify the ambiguity.

[4] Negrin v. Norwest Mortgage, Inc., 700 N.Y.S.2d 184 (N.Y. App. Div. 1999).

[5] 12 C.F.R. § 560.2(b)(5) (1999).

[6] See e.g., OTS Op. Chief Counsel (November 22, 1999) (certain ATM fees); OTS Op. Chief Counsel (March 10, 1999) (fax fees for payoff statements); OTS Op. Chief Counsel (December 24, 1996) (appraisal and credit insurance fees); FHLBB Op. Chief Counsel (June 29, 1988) (late payment charges).

[7] OTS has noted in the past that institutions are not required to provide services free of charge. See OTS Op. Chief Counsel (Nov. 22, 1999) at 10.

3

Therefore, under § 560.2(b)(5), to the extent § 274-a(2) would prohibit the Association from charging a borrower for faxing a loan payoff statement requested by the borrower, § 274-a(2) does not apply to the Association.

In reaching this conclusion, we have relied on the information, representations, and materials you submitted to us in writing and in subsequent conversations with OTS staff, as summarized herein.  Any material differences in the facts or circumstances from those described herein could result in different conclusions.

If you have any questions regarding this matter, please contact Teresa A. Scott (Counsel, Banking and Finance) at 202-906-6478.

Very truly yours,

Carolyn J. Buck
Chief Counsel

cc:  Regional Directors
     Regional Counsel

LEXSEE 768 N.E.2D 262

**MARCIA MOSKOWITZ, Indiv. and On Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. WASHINGTON MUTUAL BANK, FA., Defendant-Appellee.**

**No. 1-01-2982**

**APPELLATE COURT OF ILLINOIS, FIRST DISTRICT, SIXTH DIVISION**

*329 Ill. App. 3d 144; 768 N.E.2d 262; 2002 Ill. App. LEXIS 235; 263 Ill. Dec. 502*

**March 29, 2002, Filed**

**SUBSEQUENT HISTORY:**   [***1] Application for Rehearing Denied May 1, 2002. Released for Publication May 22, 2002.

**PRIOR HISTORY:**   Appeal from the Circuit Court of Cook County. No. 01 CH 2746. Honorable John K. Madden, Judge Presiding.

**DISPOSITION:**   Affirmed.

**COUNSEL:** COUNSEL FOR APPELLANT: Block & Landsman, Chicago, Illinois, Alan F. Brock, OF COUNSEL.

COUNSEL FOR APPELLEE: Jenner & Block, LLC, Chicago, Illinois, Matthew M. Neumeier, Danielle J. Szukala, OF COUNSEL.

**JUDGES:** JUSTICE O'BRIEN delivered the opinion of the court. GALLAGHER, P.J., and BUCKLEY, J., concur.

**OPINION BY:** O'BRIEN

**OPINION**

[*145]  [**263] JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiff, Marcia Moskowitz, appeals an order of the circuit court granting defendant's, Washington Mutual Bank's, section 2-619 (of the Illinois Code of Civil Procedure) motion to dismiss her class-action complaint on the ground that federal law preempts her state law claims. In her complaint, plaintiff alleged that: (1)

defendant's pattern and practice of charging consumers an undisclosed fee as a prerequisite to releasing their mortgages violates the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) ( *815 ILCS 505/1* [***2] *et seq.* (West 2000)); and (2) defendant's charging of the fee constitutes a breach of contract. On appeal, plaintiff contends that the trial court erred in granting defendant's motion because the federal regulations  [*146] pursuant to the Home Owners' Loan Act of 1933 (HOLA) (*12 U.S.C. § 1461 (2000)*) do not preempt her claims. We affirm.

In February 2000, plaintiff obtained a mortgage from defendant, a federally chartered savings association. In November 2000, in connection with plaintiff's impending sale of the property, she received a "Demand/Payoff Statement" prepared by defendant detailing the total amount required to pay the loan in full. The total amount included unpaid principal balance and interest, a prepayment fee, a payoff statement fee, and a fax fee. The document further stated that "[t]he lien will not be released if: *** an insufficient amount is received to pay off the loan in full." On two occasions after plaintiff's receipt of the statement, plaintiff's representative telephoned defendant asking defendant to waive the payoff statement fee. Defendant refused to waive the fee. Plaintiff paid the entire amount listed on the payoff statement when she [***3] closed on the sale of her property.

Plaintiff subsequently filed a class action complaint, alleging that: (1) defendant breached its contract with plaintiff and the  [**264] putative class by requiring them to pay the previously undisclosed payoff statement fee before defendant released the mortgage; and (2) defendant's pattern and practice of charging the fee



EXHIBIT

b

329 Ill. App. 3d 144, *146; 768 N.E.2d 262, **264;
2002 Ill. App. LEXIS 235, ***3; 263 Ill. Dec. 502

violated the Illinois Consumer Fraud Act. Defendant moved to dismiss plaintiff's complaint pursuant to section 2-619 on the ground that HOLA expressly preempts state laws regulating loan-related fees. Alternatively, defendant filed a section 2-615 motion to dismiss contending that the complaint failed to state a claim upon which relief could be granted. The trial court granted defendant's motion to dismiss pursuant to section 2-619 without considering defendant's section 2-615 motion to dismiss. Plaintiff filed this timely appeal. The standard of review for a dismissal based on section 2-619 is de novo. *Griffin v. Universal Casualty Co., 274 Ill. App. 3d 1056, 1063, 211 Ill. Dec. 232, 654 N.E.2d 694 (1995); Kedzie & 103rd Currency Exchange, Inc. v. Hodge, 156 Ill. 2d 112, 116, 189 Ill. Dec. 31, 619 N.E.2d 732 (1993).* [***4]

Defendant contends that the trial court properly granted its section 2-619 motion to dismiss on the ground that federal law preempts plaintiff's state claims against defendant. Under the preemption doctrine, which arises from the *supremacy clause of the United States Constitution* (U.S. Court, art. VI, cl. 2), we examine whether Congress intended for federal law to preempt state law in a given case. *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152, 73 L. Ed. 2d 664, 674-75, 102 S. Ct. 3014, 3022 (1982).* Federal statutes and regulations can preempt state law in the following circumstances: (1) the language of the statute or regulation expressly preempts state law; (2) Congress implemented a comprehensive regulatory scheme in a given area, removing the entire field from state law; [*147] or (3) state law as applied conflicts with federal law. *Sprietsma v. Mercury Marine, 197 Ill. 2d 112, 117, 258 Ill. Dec. 690, 757 N.E.2d 75 (2001),* cert. granted,   , *151 L. Ed. 2d 883, 122 S. Ct. 917 (2002).* Where the statute or regulation contains language expressly preempting state law, "the task of statutory [***5] construction must *** focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Sprietsma, 197 Ill. 2d at 120-21,* quoting *CSX Transportation, Inc. v. Easterwood, 507 U.S. 658, 664, 123 L. Ed. 2d 387, 396, 113 S. Ct. 1732, 1737 (1993).*

In section 5(a) of HOLA, Congress authorized the Office of Thrift Supervision (OTS) to issue regulations governing federal savings associations. *12 U.S.C. § 1464(a)(1) (2000).* "Congress plainly envisioned, that federal savings and loans would be governed by what the [OTS] not any particular State deemed to be the 'best

practices'" of local thrift institutions and thus, "Congress expressly contemplated, and approved, the [OTS]'s promulgation of regulations superseding state law." *de la Cuesta, 458 U.S. at 161-62,73 L. Ed. 2d at 680, 102 S. Ct. at 3026-27.*

Here, defendant, as a federally chartered savings association, is subject to the OTS regulations, which provide as follows:

"*Section 560.2* Applicability of law.

(a) *Occupation of field.* Pursuant to sections 4(a) and 5(a) of the HOLA, *12 U.S.C. 1463* [***6] *(a), 1464(a),* OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes [**265] of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of [***7] this section ***. For purposes of this section, state law includes any state statute, regulation, ruling, order or judicial decision.

(b) *Illustrative examples.* *** [T]he

329 Ill. App. 3d 144, *147; 768 N.E.2d 262, **265;
2002 Ill. App. LEXIS 235, ***7; 263 Ill. Dec. 502

types of state laws preempted [*148] by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

***

(b)(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

***

(b)(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents ***;

***

(c) *State laws that are not preempted.* State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

(c)(1) Contract and commercial law[.]" (Emphasis added.) *12 C.F.R. § 560.2 (2001).*

Therefore, OTS "occupies the entire field of lending regulation for federal savings associations", [***8] (*12 C.F.R. § 560.2(a) (2001)*) and specifically preempts "state laws purporting to impose requirements regarding *** []oan-related fees" (*12 C.F.R. § 560.2(b)(5) (2001)*). Accordingly, if the payoff statement fee in the case before us is a "loan-related fee" as defined in *section 560.2* of the OTS regulations, federal law preempts, plaintiff's Illinois Consumer Fraud Act claim.

The OTS addressed this is sue in a pair of opinion letters in the first opinion letter, the OTS addressed whether federal law preempted the California unfair business practices statute and the California deceptive, false and misleading advertising statute (collectively

referred to as the UCA) as it was being applied to demand a statement (or payoff statement) and facsimile fees charged by federal savings associations. The OTS concluded that demand statement fees are loan-related fees and "to the extent that the UCA is being used to regulate the imposition of loan-related fees that are part of the Associations' lending programs, the UCA is preempted." 1999 OTS Op., No. P-99-3 (March 10, 1999).

In the second opinion letter, the OTS addressed a New York law that limited payoff statement fees. The New York law [***9] stated that an association must provide an initial payoff statement free of charge, and must not charge more than twenty dollars [**266] for each subsequent payoff statement requested by the borrower. An association operating in New York charged its customers a fee for faxing an initial payoff statement and [*149] asked the OTS whether federal law preempted state law in its case. The OTS concluded that a fee charged for faxing a payoff statement is a loan-related fee, and to the extent the New York law would prohibit an association from charging such a fee, federal law preempted the state law as applied to the association. The OTS further reasoned that "[t]he payoff statement is an integral part of the lending process as it provides the information necessary to satisfy the debt and extinguish the extension of credit." 2000 OTS Op., No. P-2000-6 (April 21, 2000).

In the case at bar, plaintiff claims that the payoff statement fee charged by defendant violates the Illinois Consumer Fraud Act. As discussed above, the OTS has determined that the payoff statement is integral to the lending process and that payoff statement fees are loan-related fees within the meaning of *section 560.2* of the OTS regulations. [***10] Therefore, federal law preempts the Illinois Consumer Fraud Act to the extent it is used to regulate an association's imposition of payoff statement fees. Accordingly, the trial court properly granted defendant's section 2-619 motion to dismiss plaintiff's Illinois Consumer Fraud Act count.

Plaintiff next contends that the trial court erred in dismissing her breach of contract claim, as the OTS expressly allows such a claim to be brought under state contract law. Plaintiff cites *section 560.2(c)* of the OTS regulations, which states that contract law is "not preempted to the extent that [it] only incidentally affect[s] the lending operations of Federal savings associations or

329 Ill. App. 3d 144, *149; 768 N.E.2d 262, **266;
2002 Ill. App. LEXIS 235, ***10; 263 Ill. Dec. 502

[is] otherwise consistent with the purposes of paragraph (a) of this section." *12 C.F.R. § 560.2(c) (2001).*

Plaintiff's breach of contract action is premised on defendant's failure to disclose in her mortgage that defendant intended to charge plaintiff a payoff statement fee prior to the release of her mortgage. The effect of plaintiff's claim would be to impose, at the state level, a substantive requirement mandating when in the loan process such fees must be disclosed. However, as discussed, the OTS [***11] has described the payoff statement as an integral part of the lending process" (emphasis added) (2000 OTS Op., No. P-2000-6 (April 21, 2000)) and the payoff statement fee as a "loan-related fee" (1999 OTS Op., No. P-99-3 (March 10, 1999)) within the meaning of *section 560.2(b)* of the OTS regulations. By regulating defendant's imposition of

payoff statement fees, the use of contract law here would more than "incidentally affect the lending operations" (*12 C.F.R. § 560.2(c) (2001)*) of defendant and would interfere with *section 560.2(a)*'s purpose of allowing "federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation" (*12 C.F.R. § 560.2(a) (2001)*). Accordingly, the [*150] trial court did not err in determining that plaintiff's breach of contract claim was preempted.

For the foregoing reasons, we affirm the circuit court.

Affirmed.

GALLAGHER, P.J., and BUCKLEY, J., concur.