UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATHEW J. TOMBERS, on behalf of himself and
all other persons similarly situated,

                         Plaintiff,

         – against –

INDYMAC BANK,

                   Defendant.

08 CV 5068 (NRB) (JCF)

---

# PLAINTIFF'S MEMORANDUM OF LAW
# IN SUPPORT OF MOTION FOR REMAND
# TO NEW YORK STATE SUPREME COURT

---

BERNSTEIN NACKMAN & FEINBERG, LLP
233 Broadway, Suite 2701
New York, New York 10279
Telephone:  (212) 748-4800

GOLDBERG, CORWIN & GREENBERG, LLP
331 Madison Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 986-1000

SHEPHERD, FINKELMAN, MILLER
& SHAH, LLC
35 E. State Street
Media, PA 19063
Telephone:  (610) 891-9880

*Attorneys for Plaintiff and the Class*

# Table of Contents

Statement of Facts ................................................................................................ 1

ARGUMENT ........................................................................................................ 2

    I.    Removal Jurisdiction Must Be Strictly Construed and the
        Burden of Establishing Federal Jurisdiction Falls on the Defendant .......... 3

    II.    There Is No Diversity Jurisdiction Over Plaintiff's Claim ........................... 4

    III.    There Is No Federal Question Jurisdiction .................................................... 12

    IV.    Plaintiff Should Be Awarded Attorneys Fees Due to the Improvident
        Removal and Objectively Unreasonable Arguments Made Therefor ....... 20

Conclusion ........................................................................................................... 22

Table of Authorities

Cases                                                                                                          Page No.

Achtman v. Kirby, McInerney & Squire, LLP,
    464 F.3d 328 (2d Cir. 2006) ............................................................................. 5

Ada Alicia v. Circuit City Stores,
    534 F.Supp. 2d 432 (S.D.N.Y. 2008) ................................................................... 20, 21

American Std., Inc. v. Oakfabco, Inc.,
    498 F. Supp. 2d 711 (S.D.N.Y. 2007) ............................................................. 2

Berisic v. Winckelman,
    2003 U.S. Lexis 12759 (S.D.N.Y. 2003) ................................................... 3, 12

Bernard v. Gerber Food Products Co.,
    938 F.Supp. 218 (S.D.N.Y. 1996) ................................................................. 11

Binetti v. Washington Mutual Bank,
    446 F. Supp. 2d 217 (S.D.N.Y. 2006) ............................................... 15, 16, 21

Blockbuster, Inc. v. Galeno,
    472 F.3d 53 (2d Cir. N.Y. 2006) .................................................................... 3

Bodner v. Oreck Direct, LLC,
    2006 U.S. Dist. LEXIS 77193 (N.D. Cal. 2006) ............................................ 5

Breakman v. AOL, LLC,
    545 F. Supp. 2d 96 (D.D.C. 2008) ............................................................ 5, 6

Caterpillar Inc. v. Williams,
    482 U.S. 386, 107 S. Ct. 2425 (1987) ..................................................... 12-14

Colon v. Rent-A-Center, Inc.,
    13 F. Supp. 2d 553 (S.D.N.Y. 1998) ............................................................. 6

Correspondent Servs. Corp. v. JVW Inv., Ltd.,
    2004 U.S. Dist. LEXIS 19341 (S.D.N.Y. 2004) .......................................... 11

Del Vecchio v. Conseco, Inc., 230 F.3d 974 (7th Cir. 2000) .................................... 6

DiTolla v. Doral Dental IPA of N.Y., LLC,
      469 F.3d 271 (2d Cir. 2006) ...................................................................... 10

Dougherty v. North Fork Bank,
      301 A.D.2d 491, 753 N.Y.S.2d 130 (2d Dept. 2003) ...................................... 2

Exxon Mobil Corp. v. Allapattah Servs., Inc.,
      545 U.S. 546, 125 S. Ct. 2611 (2005) ....................................................... 4, 5

Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,
      458 U.S. 141, 102 S. Ct. 3014 (1982) ..................................................... 15, 21

Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal.,
      463 U.S. 1 (1983) ...................................................................................... 13

Freunscht v. BankNorth, NA,
      2004 U.S. Dist. LEXIS 4209 (D.N.H. 2004) ................................................ 19

Gilman v. BHC Securities, Inc.,
      104 F.3d 1418 (2d Cir. 1997) ....................................................... 3, 6, 7, 20

Givens v. W.T. Grant Co., 457 F.2d 612 (2d Cir. 1972),
      vacated on other grounds, 409 U.S. 56 (1972) ..................................... 8, 9, 20

Greenberg v. Trace Int'l Holdings,
      1999 U.S. Dist. LEXIS 11985 (S.D.N.Y. 1999) ............................................. 9

Hancock v. Bank of America,
      272 F. Supp.2d 608 (W.D. Ky. 2003 ........................................................... 18

In re Ciprofloxacin Hydrochloride Antitrust Litigation,
      166 F. Supp. 2d 740 (E.D.N.Y. 2001) .......................................................... 8

In re GMC Dex-Cool Prods. Liability Litigation,
      2006 U.S. Dist. LEXIS 74503 (S.D. Ill. Sept. 27, 2006) ............................. 5, 6

In Re: Literary Works in Electronic Databases Copyright Litigation,
      509 F.3d 116 (2d Cir. 2006) ....................................................................... 5

Jacobs v. ABN-Aero Bank N.V.,
      2004 U.S. Dist. LEXIS 6888 (E.D.N.Y. 2004) ....................................... 18, 19

-iii-

Katz v. Warner-Lambert Co.,
 9 F. Supp. 2d 363 (S.D.N.Y. 1998) .............................................................. 10

Kheel v. Port of New York Authority,
 457 F.2d 46 (2d Cir. 1972) ........................................................................... 10

Kings Choice Neckwear, Inc. v. DHL Airways, Inc.,
 2003 U.S. Dist. LEXIS 17507 (S.D.N.Y 2003) ................................... 9, 11, 14

Leyse v. Domino's Pizza LLC,
 2004 U.S. Dist. LEXIS 16869 (S.D.N.Y. 2004) ........................................... 10

Louisville & Nashville R. Co. v. Mottley,
 211 U.S. 149 (1908) ...................................................................................... 13

Martin v. Franklin Capital Corp.,
 546 U.S. 132 (2005) ................................................................................. 20, 21

Merrell Dow Pharmaceuticals, Inc. v. Thompson,
 478 U.S. 804, 106 S.Ct. 3229 (1986) ...................................................... 12, 13

Negrin v. Norwest Mortgage, Inc.,
 263 A.D.2d 39, 700 N.Y.S.2d 184 (2d Dept. 1999) ....................................... 2

Pacific Westeel Racking, Inc. v. Evanston Ins. Co.,
 2008 U.S. Dist. LEXIS 11053 (S.D.N.Y. Feb. 13, 2008) ................................ 3

Somlyo v. J. Lu-Rob Enterprises, Inc.,
 932 F.2d 1043 (2d Cir. 1991) ......................................................................... 3

State Farm Mut. Automobile Ins. Co. v. Campbell,
 538 U.S. 408, 123 S. Ct. 1513 (2003) ............................................................. 8

Trapanotto v. Aetna Life Ins. Co.,
 1996 U.S. Dist. LEXIS 10458 (S.D.N.Y. 1996) ............................................. 9

United Food & Commercial Workers Union, Local 919 v.
Centermark Properties Meriden Square, 30 F.3d 298 (2d Cir. 1994) ................... 3

Zahn v. International Paper Co.,
 414 U.S. 291, 94 S. Ct. 505 (1973) ................................................................. 4

-iv-

Federal Statutes

12 U.S.C. § 1463 ................................................................................................ 14

12 U.S.C. § 1463(g) .......................................................................................... 15

12 U.S.C. § 85 .................................................................................................... 14

12 U.S.C. § 86 .................................................................................................... 14

28 U.S.C. § 1331 ............................................................................................... 12

28 U.S.C. § 1332(a) ................................................................. 4, 5, 10, 11, 21

28 U.S.C. § 1367 ................................................................................................. 4

28 U.S.C. § 1447(c) .......................................................................................... 20

29 U.S.C. § 1132 ............................................................................................... 14

29 U.S.C. § 185 ................................................................................................. 14


Federal Regulation

12 C.F.R. § 560.2 .............................................................................................. 16


State Statutes

CPLR § 909 ........................................................................................................... 9

General Business Law § 349 ........................................ 1, 7, 9, 15, 16, 20

Real Property Law § 274-a ............................................................................. 1

Plaintiff has moved for remand because this state-law case has been improvidently removed to this Court despite the absence of federal jurisdiction. Neither of the theories of federal jurisdiction cited in the defendant's Notice of Removal – diversity of citizenship jurisdiction and federal question jurisdiction – applies to this case.

<u>Statement of Facts</u>

Plaintiff's complaint alleges that defendant IndyMac Bank ("IndyMac"), a thrift/savings bank headquartered in Pasadena, CA, has violated New York law by charging a $20.00 "Fax/Quote" fee for providing mortgage payoff statements to New York residents.  (Complaint, ¶¶ 2 and 4).

The complaint alleges that in June of 2005 plaintiff Mathew J. Tombers ("Tombers") was the owner of real property located at 2 South End Avenue, Apt. 3K, New York, New York 10280 that was subject to a mortgage held by defendant IndyMac Bank.  When plaintiff elected to sell this real estate in June of 2005, he received a payoff statement from IndyMac for which IndyMac charged him a "Fax/Quote" fee of $20.00. (Complaint, ¶¶ 3 & 9-11).

The complaint alleges that defendant's $20.00 fee for a mortgage payoff statement violates New York Real Property Law § 274-a (First Cause of Action) and is a deceptive act or practice within the meaning of New York General Business Law ("GBL") § 349 (Second Cause of Action).  It alleges that defendant has been unjustly enriched over a six-year period by collecting and retaining these unlawful fees (Third

1

Cause of Action). (Complaint, ¶¶ 12-21).[1] No cause of action under any federal statute is alleged or implied.

On April 30, 2008 plaintiff commenced this action by filing a summons and complaint in New York State Supreme Court. On May 5, 2008, pursuant to CPLR § 311, IndyMac was served with a copy of the summons and complaint at its New York office. Defendant was required to respond to the complaint by May 25, 2008 (see CPLR 320 (a)) but failed to do so. Plaintiff's motion for default, filed in the state court, remains pending.[2]

## ARGUMENT

The burden of establishing the existence of federal jurisdiction falls on the defendant because it has removed this case. See Part I, *infra*. Defendant cannot establish the $75,000 amount in controversy required for diversity jurisdiction under 28 U.S.C. § 1332. See Part II, *infra*. Nor can defendant establish the existence of a question arising under a federal statute, as required for jurisdiction under 28 U.S.C. § 1331. See Part III, *infra*. Finally, since the case was improvidently removed to federal court, plaintiff is entitled to fees under 28 U.S.C. § 1447(c). See Part IV, *infra*.

---

[1]    The New York courts have held that the charging of a fee for an initial payoff statement is illegal under both statutes. Dougherty v. North Fork Bank, 301 A.D.2d 491, 753 N.Y.S.2d 130 (2d Dept. 2003); Negrin v. Norwest Mortgage, Inc., 263 A.D.2d 39, 42-51, 700 N.Y.S.2d 184, 187-193 (2d Dept. 1999).

[2]    Plaintiff submits that this motion for default should be adjudicated by the state court on remand, as non-jurisdictional motions cannot be addressed by this Court in the absence of subject matter jurisdiction. American Std., Inc. v. Oakfabco, Inc., 498 F. Supp. 2d 711, 715 (S.D.N.Y. 2007).

I.    Removal Jurisdiction Must Be Strictly Construed and the
      Burden of Establishing Federal Jurisdiction Falls on the Defendant

Removal of a state case to a federal court implicates significant federalism concerns.  Pacific Westeel Racking, Inc. v. Evanston Ins. Co., 2008 U.S. Dist. LEXIS 11053 (S.D.N.Y. Feb. 13, 2008).  "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability."  Somlyo v. J. Lu-Rob Enterprises, Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991) (citation omitted).  Accordingly, "[t]he party asserting federal jurisdiction bears the burden of proving that the case is properly in federal court."  Gilman v. BHC Securities, Inc., 104 F.3d 1418, 1421 (2d Cir. 1997) (citation omitted); Berisic v. Winckelman, 2003 U.S. Lexis 12759 at *4 (S.D.N.Y. 2003) ("burden falls squarely upon the removing party to establish its right to a federal forum by competent proof.")

Where the amount in controversy is in dispute, as here, "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount."  United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, 30 F.3d 298, 304-305 (2d Cir. 1994).  See Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. N.Y. 2006) ("long-standing judicial rules" place the burden of establishing amount in controversy on the removing party).  IndyMac has altogether failed to meet this burden.

II.    <u>There Is No Diversity Jurisdiction Over Plaintiff's Claim</u>

Federal diversity jurisdiction has been improperly invoked by IndyMac. The amount in controversy does not exceed or even approach $75,000 (exclusive of interest and costs), as required under 28 U.S.C. § 1332(a). The named plaintiff's claim is for $20.00. In the absence of the jurisdictional amount, it is insufficient to base the claim of federal diversity jurisdiction on the fact that this is an action between New York plaintiffs and a California defendant.

In a class action, just as in a non-class action, the amount-in-controversy requirement of 28 U.S.C. § 1332(a) is not met unless the claim of the named plaintiff exceeds $75,000. For many years Supreme Court case law held that Section 1332(a) required that the claim of each member of a proposed class action exceed the statutorily required amount. See <u>Zahn v. International Paper Co.</u>, 414 U.S. 291, 94 S. Ct. 505 (1973). However, class action jurisprudence has changed as a result of the passage of 28 U.S.C. § 1367 in 1990. Under Section 1367, as authoritatively interpreted in <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 125 S. Ct. 2611 (2005), class members whose claims are less than the statutory amount may participate in a federal class action under the statute's grant of "supplemental jurisdiction". Nonetheless, since Section 1367 jurisdiction is supplementary to diversity jurisdiction, it remains an inescapable requirement that the claim of at least one named plaintiff exceed the $75,000 statutory amount. *Id.*

Thus the Supreme Court has held that diversity jurisdiction in a class

4

action still requires that "at least one named plaintiff in the action satisf[y] the amount-in-controversy requirement". Exxon Mobil Corp., *supra*, 545 U.S. at 549, 125 S. Ct. at 2615. Following Exxon Mobil, the Second Circuit has also held that at least one plaintiff's claim must satisfy the $75,000 statutory amount in order for a federal court to have subject matter jurisdiction under 28 U.S.C. § 1332(a). Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 334 (2d Cir. 2006) ("at least one remaining named plaintiff must meet the $75,000 amount-in-controversy requirement for the exercise of diversity jurisdiction") (citation omitted); *see also* In Re: Literary Works in Electronic Databases Copyright Litigation, 509 F.3d 116, 127-28 (2d Cir. 2006). In other words, "a large number of class members with *de minimis* claims cannot piggyback into federal jurisdiction on the equally tiny claim of a class representative." In re GMC Dex-Cool Prods. Liability Litigation, 2006 U.S. Dist. LEXIS 74503 at *27 (S.D. Ill. Sept. 27, 2006). In its letter-brief to the Court dated June 9, 2008, at p.3, defendant acknowledges this requirement.

In this case plaintiff's $20.00 damage claim falls very far short of satisfying the $75,000 amount-in-controversy requirement. The federal courts have held that the statutory amount-in-controversy requirement is not satisfied when, as here, not a single claim exceeds $75,000. See, *e.g.*, Breakman v. AOL, LLC, 545 F. Supp. 2d 96, 103 (D.D.C. 2008) ($1,628.63 in actual and statutory damages incurred by typical plaintiff did not meet amount-in-controversy requirement of diversity statute*)*; Bodner v. Oreck Direct, LLC, 2006 U.S. Dist. LEXIS 77193 (N.D. Cal. 2006) ($400 claim in class action did not

meet amount-in-controversy requirement in diversity statute); <u>Colon v. Rent-A-Center, Inc.</u>, 13 F. Supp. 2d 553, 558 (S.D.N.Y. 1998) ($300 claim in class action did not meet amount-in-controversy requirement).

       Contrary to defendant's contentions, none of the additional relief requested in the complaint brings Tombers' $20.00 damage claim over, let alone near, the $75,000.00 threshold for federal diversity jurisdiction. In its Notice of Removal and subsequent correspondence, defendant cites punitive damages, attorneys fees, and injunctive relief as supposedly creating an amount in controversy greater than $75,000. (Notice of Removal, ¶¶ 12-13). Defendant incorrectly treats these three categories as pertaining to the class as a whole, but fails to analyze the amount thereof with respect to the claim of the named class representative. However, the correct inquiry is whether Tombers' $20.00 claim (or the claim of any class member) will reasonably exceed $75,000 if the *pro rata* share of punitive damages, attorneys fees, and injunctive relief reasonably allocable to him is added to *his* $20.00 claim, since he is the named plaintiff. <u>Breakman v. AOL, LLC</u>, *supra,* 545 F. Supp. 2d at 106; <u>Gilman v. BHC Securities, Inc.</u>, *supra*, 104 F.3d at 1431 (amount of punitive damages must be determined *pro rata* for each class member); <u>In re GMC Dex-Cool Prods. Liability Litigation</u>, *supra,* 2006 U.S. Dist. LEXIS 74503 at *31-32 ("cost of equitable relief to a defendant nonetheless must be apportioned pro rata among the members of the proposed class"); see also <u>Del Vecchio v. Conseco, Inc.</u>, 230 F.3d 974, 978 (7th Cir. 2000) ("whatever the form of relief sought, each plaintiff's claim must be held *separate* from each other plaintiff's claim from both

the plaintiff's and the defendant's standpoint.").  Measuring the relief sought in this

case on a class-wide basis, instead of with respect to whether it exceeds $75,000 for the

individual plaintiff, would eviscerate the requirement that at least one plaintiff have a

claim in excess of $75,000.  Moreover, defendant's reliance on these categories of relief is

mis-placed altogether, as the overwhelming weight of authority precludes their

inclusion in the amount-in-controversy analysis.

        Punitive Damages: The Court of Appeals has expressly held that in

analyzing whether punitive damages meet the amount-in-controversy requirement,

"punitive damages asserted on behalf of a class may not be aggregated for jurisdictional

purposes where . . . the underlying cause of action asserted on behalf of the class is not

based upon a title or right in which the plaintiffs share."  Gilman v. BHC Securities, Inc.,

*supra*, 104 F.3d at 1431.  Therefore the amount of the named plaintiff's claim for punitive

damages (if one were asserted) would be the correct measuring rod.  However, punitive

damages have not been pleaded in view of the state law provisions that foreclose a

punitive damages remedy in a class action maintained in the New York State courts

(CPLR Article 9).

        The *pro rata* value of punitive damages to Tombers (or to any class

member), given his $20,00 claim, would be far less than $75,000 even if such damages

are sought.  Even if Tombers had included a claim for punitive damages, that claim

would be limited to $1,000 under GBL § 349 ("The court may, in its discretion, increase

the award of damages to an amount not to exceed three times the actual damages up to

one thousand dollars, if the court finds the defendant willfully or knowingly violated this section.")  Hence punitive damages, even if they were pleaded, could not bring the dollar amount of Tombers' claim to more than $1,020.00.[3]  Moreover, even at their outermost limits the due process limitations on punitive damages – see generally State Farm Mut. Automobile Ins. Co. v. Campbell, 538 U.S. 408, 425, 123 S. Ct. 1513 (2003)  – would limit Tombers' *pro rata* recovery of punitive damages on the other two causes of action in the complaint to less than $75,000.[4]

Attorneys Fees: It is well-settled that attorney's fees may not be included in the amount-in-controversy analysis unless they are recoverable as of right pursuant to statute or contract.  Givens v. W.T. Grant Co., 457 F.2d 612, 614 (2d Cir. 1972), *vacated on other grounds,* 409 U.S. 56 (1972) ("it is settled that such fees may not properly be included in determining the jurisdictional amount unless they are recoverable as a matter of right") (emphasis supplied); In re Ciprofloxacin Hydrochloride Antitrust Litigation, 166 F. Supp. 2d 740, 756 (E.D.N.Y. 2001) ("Because plaintiffs in Platt would

---

[3]     Under the well-settled rule that plaintiff is the master of his claim, see p. 12, *infra,* it is more than slightly awkward for defendant to rely on punitive damages when plaintiff has not sued therefor.

[4]     Subject to exceptions, the Supreme Court in State Farm suggested that few punitive damages awards that are greater than ten times the amount of compensatory damages would meet due process standards.  538 U.S. at 425.  While a higher ratio is arguably more appropriate where compensatory damages are small in amount, in this case even if punitive damages were sought and were awarded to Tombers at a ratio of 100 times his $20.00 claim, the resulting $20,000 punitive damages award would be less than a third of the amount-in-controversy required for his claim to support federal diversity jurisdiction.

not necessarily be awarded attorney's fees as of right even if successful, the rule set forth in Givens disallows augmenting the amount in controversy for the purpose of determining whether there is diversity jurisdiction.").  However, in this case the recovery of attorneys fees is discretionary, not mandatory.  See GBL § 349 ("The court <u>may</u> award reasonable attorney's fees to a prevailing plaintiff") (emphasis supplied); see also CPLR § 909 (discretionary attorneys fees provision of New York State class action provision).

The overwhelming weight of federal court authority declines to include attorneys fees in the amount-in-controversy analysis not only because these statutes do not meet the Second Circuit's rule in <u>Givens</u>, *supra*, but also because the amount of fees is inherently uncertain.  See, *e.g.*, <u>Greenberg v. Trace Int'l Holdings</u>, 1999 U.S. Dist. LEXIS 11985 at *12 (S.D.N.Y. 1999) ("no reasonable method to gauge the plaintiffs' likelihood of success . . . at this point in the litigation [and] no way to know what fees are going to be incurred over the course of the litigation or their reasonableness."); <u>Trapanotto v. Aetna Life Ins. Co.</u>, 1996 U.S. Dist. LEXIS 10458 at *8-11 (S.D.N.Y. 1996); see <u>Kings Choice Neckwear, Inc. v. DHL Airways, Inc.</u>, 2003 U.S. Dist. LEXIS 17507 at *19-20 (S.D.N.Y 2003) ("effort to meet the amount-in-controversy requirement by invoking potential counsel fees "travels a well-worn path that has been rejected by at least three courts in this district and followed by none in the context of a class action.").

Finally, "the total amount of fees may not be aggregated for jurisdictional purposes, but must be attributed pro rata to individual class members."  <u>Greenberg v.</u>

9

<u>Trace Int'l Holdings</u>, *supra*, 1999 U.S. Dist. LEXIS 11985 at *11.  Under any reasonably conceivable set of circumstances, the portion of an attorneys fee award allocable *pro rata* to Tombers' individual claim will not exceed $75,000.

   <u>Injunctive Relief</u>: Although the complaint contains a request for injunctive relief against further illegal payoff statement charges that might cost the defendant over $75,000 in foregone fee income from the class as a whole, the potential class-wide loss for defendant does not satisfy the statutory amount-in-controversy requirement.  First, the defendant's loss with respect to the named plaintiff or any individual class member would be $20.00.  Second, the rule in the Second Circuit is that any harm or loss to the defendant is not germane because the amount in controversy under 28 U.S.C. § 1332(a) is determined from the plaintiff's viewpoint.  <u>DiTolla v. Doral Dental IPA of N.Y., LLC</u>, 469 F.3d 271, 276-77 (2d Cir. 2006).  This has been the governing rule in the Second Circuit since 1972.  See <u>Kheel v. Port of New York Authority</u>, 457 F.2d 46, 49 (2d Cir. 1972).  Although a small minority of cases have considered the potential loss to a defendant, measuring the amount in controversy requirement exclusively from the plaintiff's viewpoint "represents the prevailing approach in this Circuit."  <u>Katz v. Warner-Lambert Co.</u>, 9 F. Supp. 2d 363, 364 (S.D.N.Y. 1998).

   Numerous cases in this circuit have declined to use a defendant's potential loss from an injunction as a basis for establishing the amount in controversy.  See, *e.g.,* <u>Leyse v. Domino's Pizza LLC</u>, 2004 U.S. Dist. LEXIS 16869 (S.D.N.Y. 2004) ("In this Circuit, the amount in controversy is measured from the plaintiff's viewpoint.");

10

<u>Kings Choice Neckwear</u>, *supra,* 2003 U.S. Dist Lexis 17507 at *14-15; <u>Colon v. Rent-A-</u>
<u>Center, Inc.</u>, *supra*, 13 F. Supp. 2d at 558 (applying plaintiff's viewpoint to value an
injunction preventing defendant from charging certain prices); <u>Bernard v. Gerber Food</u>
<u>Products Co.</u>, 938 F.Supp. 218 (S.D.N.Y. 1996) (applying plaintiff's viewpoint to value
an injunction preventing defendant from disseminating certain advertising, and
mandating alternate advertising).  In <u>Correspondent Servs. Corp. v. JVW Inv., Ltd.</u>, 2004
U.S. Dist. LEXIS 19341, at *11 (S.D.N.Y. 2004), the court noted that "the 'either party'
rule" for measuring the amount in controversy "is not followed in this circuit".
Accordingly, defendant's claims of possible harm to it are not a cognizable basis for
establishing the amount in controversy.

As in <u>Kings Choice Neckwear</u>, *supra,* the value of an injunction in this case
"must be assessed from the perspective of each individual class member. From that
perspective, the amount in controversy falls far short of the required $ 75,000."  The
value to any individual class member of an injunction against the "Fax/Quote" fee is
$20.00, not $75,000.  Therefore the injunctive relief sought by plaintiff does not meet the
$75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a).

*        *        *

In sum, defendant has improvidently postulated the existence of diversity
jurisdiction by relying on discretionary attorneys fees that cannot be counted,
unpleaded punitive damages that cannot be aggregated, and harm from injunctive
relief that cannot be considered.  Defendants have invoked diversity jurisdiction in

11

defiance of abundant circuit precedent, and have utterly failed to show that Tombers'
$20.00 claim will involve additional relief that will bring its value over $75,000.

   III.    There Is No Federal Question Jurisdiction

        Federal question jurisdiction under 28 U.S.C. § 1331 has also been

improperly invoked by defendant as a ground for removal.  28 U.S.C. § 1331 confers

jurisdiction only over cases "arising under" federal law.  Removal of state cases that

assertedly involve federal questions is governed by the "well-pleaded complaint rule",

which provides that federal jurisdiction exists only when a federal question is presented

on the face of the plaintiff's properly pleaded complaint.  Caterpillar Inc. v. Williams,

482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987).  "The rule makes the plaintiff the master of

the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law."

Id.; accord, Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 809 n. 6, 106

S.Ct. 3229, 3233 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff

has not advanced"); Berisic, supra, 2003 U.S. Lexis 12759 at *3 (plaintiff as "the master of

his claims . . . may avoid federal jurisdiction by exclusive reliance on state law")

(citations omitted).  In this case, plaintiff's complaint raises only state law claims and

does not invoke federal law, hence does not "arise under" any federal statute.

        Further, an asserted need to interpret federal law in a state law case – as

raised by the defendant here – does not confer federal jurisdiction where it does not

otherwise exist. A suit seeking recovery under state law is not transformed into a suit

"arising under" a federal statute that is not the basis for the complaint merely because

the court may subsequently need to interpret that statute in the course of the case. "The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Merrell Dow Pharmaceuticals, Inc. v. Thompson, supra, 478 U.S. at 813, 102 S. Ct. at 3234 (1986).

In particular, the interposition of a defense based on federal law does not create federal question jurisdiction. The Supreme Court has left no doubt that a suit under state law does not "arise under" federal law simply because the defendant may assert the defense that the state statute is pre-empted by federal law. "Since 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 14 (1983); see Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149 (1908).

The rejection of a federal defense as the basis for federal question jurisdiction applies with equal force when, as here, the defense is a claim of preemption of a state law by a federal statute. A defendant cannot, merely by injecting a federal preemption defense into an action that asserts a state-law claim, transform the action into one "arising under" federal law. Caterpillar, Inc. v. Williams, supra, 482 U.S. at 399.

IndyMac invokes – improperly – a very narrow exception to the rule that a federal preemption defense does not create a question "arising under" a federal statute.

13

This exception is the "complete preemption" doctrine (also referred to as "jurisdictional preemption").  As explained by the Supreme Court: "[o]n occasion, the Court has concluded that the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'  Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, Inc. v. Williams, *supra,* 482 U.S. at 393, 107 S.Ct. at 2430 (citations omitted).

The extraordinary nature of the complete preemption doctrine is seen from the fact that the Supreme Court has recognized only three statutes as having the effect of so completely pre-empting state law claims as to create federal jurisdiction: the Labor Management Relations Act, 29 U.S.C. § 185; the Employee Retirement Income Security Act, 29 U.S.C. § 1132; and the usury provisions of the National Bank Act, 12 U.S.C. §§ 85 & 86.  *See* Kings Choice Neckwear, *supra,* 2003 U.S. Dist Lexis 17507 at *10 (complete preemption exception is of "extremely limited scope").

Defendant's argument that the Home Owners Loan Act ("HOLA"), 12 U.S.C. §§ 1463 *et seq.,* has complete preemptive effect and displaces all provisions of state law is frivolous.  No provision of HOLA manifests the requisite intent to disallow state law claims.  Although this statute has been on the books for over seventy-five years, defendant is unable to point to a single case holding it to have completely preempted state law.  On its face, there is nothing in the statute to suggest such a

14

conclusion.  Quite to the contrary, when conventional preemption defenses have come before the Supreme Court under HOLA, it has been careful to hold that the statute does not wholly displace state law.  In emphasizing that the authority of the Federal Home Loan Bank Board (now the Office of Thrift Supervision) to pre-empt state laws is not limitless, Justice O'Connor stated: " . . . nothing in the language of § 5(a) of HOLA . . . remotely suggests that Congress intended to permit the Board to displace local laws, such as tax statutes, not directly related to savings and loan practices."  Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 171-172, 102 S. Ct. 3014, 3032 (1982) (O'Connor, J., concurring).  Notably, in HOLA Congress singled out state usury statutes for special treatment and included in HOLA a special section expressly preempting them, 12 U.S.C. § 1463(g).  This confirms that Congress knew how to select those provisions of state law that it intended to preempt and that HOLA was not intended to sweep away all state regulation indiscriminately.

Moreover, a court in this district has expressly held that HOLA does not pre-empt New York GBL § 349 at all.  In Binetti v. Washington Mutual Bank, 446 F. Supp. 2d 217 (S.D.N.Y. 2006), plaintiff brought a case against the bank "for breach of contract, unjust enrichment, and violation of *General Business Law § 349* (New York's Consumer Fraud Statute), on behalf of herself and all other borrowers (both in New York and nationwide) who obtained and then terminated co-op loans originated or held by defendant."  446 F. Supp. 2d at 218 (italics in original).  The defendant argued that plaintiff's state law consumer fraud claims were preempted by HOLA and by regu-

15

lations issued by the Office of Thrift Supervision ("OTS"), in particular by 12 C.F.R. §

560.2 – the same regulation that IndyMac relies upon in this case. *See id.* The court held

that there was no conflict between state and federal law and no preemption:

> the New York Consumer Fraud Statute, which
> declares unlawful "deceptive acts or practices
> in the conduct of any business, trade, or com-
> merce or in the furnishing of any service in this
> state," is not directly aimed at lenders, and has
> only an incidental impact on lending relation-
> ships. See McKinney's Gen. Bus. Law *§ 349(a)*.
> Additionally, there is nothing in the record to
> suggest that the New York statute is in conflict
> with the federal objectives identified in *§ 560.2*.
> Indeed, the New York Consumer Fraud Statute
> is precisely the type of general commercial law
> designed to "establish the basic norms that
> undergird commercial transactions" that OTS
> has indicated it does not intend to preempt.

446 F. Supp. 2d at 218.   Given the holding in this district that state consumer protection

statutes – in particular, GBL § 349 – are not preempted at all by HOLA, there is no room

for defendant's extravagant conclusion that state law is so completely displaced by

HOLA that plaintiff's state law claims somehow "arise under" federal law.

Most telling is the fact that the very OTS regulation that defendant

invokes, 12 C.F.R. § 560.2, expressly provides that state law in a number of areas is *not*

preempted by HOLA.  12 C.F.R. § 560.2(c) provides as follows:

> State laws of the following types are not preempted to the
> extent that they only incidentally affect the lending
> operations of Federal savings associations or are otherwise

consistent with the purposes of paragraph (a) of this section:

> (1) Contract and commercial law;

> (2) Real property law;

> . . . .

The defendant's claim of complete preemption is undermined by the very regulation that it relies upon. The regulation provides that innumerable state laws are not preempted at all. This is hardly the material that complete preemption is made of.

In support of its complete preemption claim, defendant not only fails to cite any cases construing HOLA, but creates the proverbial "straw man" by citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 123 S. Ct. 2058 (2003), a case involving usury claims and the provisions of the National Bank Act. (Notice of Removal, ¶ 14). Beneficial is altogether inapposite because this case does not involve the National Bank Act and has no usury claims.

In Beneficial the question before the Court was whether Congress intended the National Bank Act "to provide the exclusive cause of action for usury claims against national banks." 539 U.S. at 9. The Court held that with respect to usury claims, Sections 85 and 86 of the National Bank Act "form a system of regulations . . . all the parts [of which] are in harmony with each other and cover the entire subject," so that "the State law would have no bearing whatever upon the case." Critical to the Court's conclusion, Section 86 provides an express federal cause of action against national banks for usury. On that basis the Court held that the usury provisions of the

National Bank Act "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complainant, as here, relies entirely on state law."  539 U.S. at 11.

However, there is no comparable provision in the National Bank Act that completely displaces, or even mentions, state laws concerning fees for mortgage payoff statements.  Outside the usury context the complete pre-emotion doctrine of Beneficial has authoritatively been held not to apply.  In particular, cases alleging that a bank has charged fax fees in violation of state laws are not subject to the complete preemption doctrine.  Jacobs v. ABN-Aero Bank N.V., 2004 U.S. Dist. LEXIS 6888 (E.D.N.Y. 2004); Hancock v. Bank of America, 272 F. Supp.2d 608 (W.D. Ky. 2003).  In Hancock the court held that "pre-emptive force does not exist with respect to the [fax fee] claims in this case" because the usury provisions of the National Bank Act do not apply to fax fees.  272 F.Supp.2d at 610.  In Jacobs, the Court held as follows:

> If the defendants interpret Beneficial as holding that all state claims preempted by the NBA or its associated regulations are also subject to the same kind of "complete preemption" as the usury claims specifically discussed in Beneficial, the defendants incorrectly construe that case. The court in Beneficial made clear that the "question in this case" was: "Does the National Bank Act provide the exclusive cause of action for usury claims against national banks?" Beneficial, 123 S. Ct. at 2063 (emphasis added). Later, the court added that "there is, in short, no such thing as a state-law claim of usury against a national bank." *Beneficial*, 123 S. Ct. at 2064 (emphasis added).  Other cases decided since Beneficial have held that the case specifically pertained to claims of usury.

2004 U.S. Dist. LEXIS 6888 at *11 (emphasis supplied; citations omitted).  Citing post-

Beneficial cases construing the National Bank Act, the Jacobs court held that "a claim concerning fax fees is not subject to 'complete preemption' under the National Bank Act." *Id* at *16.  See, *e.g.,* Freunscht v. BankNorth, NA, 2004 U.S. Dist. LEXIS 4209 (D.N.H. 2004) (National Bank Act did not displace state statute regulating installment contracts that did not concern usury).

Thus, complete preemption by the National Bank Act is limited to state usury laws, and overwhelming case law authority holds that the National Bank Act does not displace state regulation of fax fees.  There is no conceivable justification for leaping from a banking statute that does not preempt fax fees to the conclusion that another banking statute does.

\*       \*       \*

In sum, there is no evidence that Congress intended HOLA to wholly displace state laws.  There is ample authority that state consumer fraud law is not only not displaced in the fax fee arena, but also that state consumer protection law is not even conventionally preempted by HOLA.  Accordingly, this case does not present a federal question "arising under" a federal statute.  Defendant's "garden variety" federal preemption defense does not permit removal of this action.  Jacobs, *supra,* 2004 U.S. Dist. LEXIS 6888 at *8 ("court finds that this kind of federal defense is not materially distinguishable from a 'garden variety' federal defense.").

19

IV.    Plaintiff Should Be Awarded Attorneys Fees Due to the Improvident
<u>Removal and Objectively Unreasonable Arguments Made Therefor</u>

Plaintiff has moved for an award of attorneys fees under 28 U.S.C. §
1447(c), which provides that "[a]n order remanding the case may require payment of
just costs and any actual expenses, including attorney fees, incurred as a result of the
removal."  The standard governing the application of Section 1447(c) was recently set
forth in <u>Martin v. Franklin Capital Corp.</u>, 546 U.S. 132, 141 (2005).  There the Court held
that the test in awarding fees in removal cases is whether the removing party "lacked an
objectively reasonable basis for seeking removal".  See <u>Ada Alicia v. Circuit City Stores</u>,
534 F.Supp. 2d 432 (S.D.N.Y. 2008) (awarding attorney's fees and costs for improper
removal of GBL § 349 claims because it was objectively unreasonable to argue that costs
to a defendant should be considered in determining the amount in controversy).
Defendant did not have an objectively reasonable basis for removal of this case under
either its diversity rationale or its federal question rationale.

IndyMac's argument that it could satisfy the $75,000 amount-in-contro-
versy requirement for diversity jurisdiction by invoking punitive damages, classwide
counsel fees and injunctive relief flies in the face of controlling Second Circuit authority.
Its invocation of potential classwide punitive damages is objectively unreasonable in the
face of the contrary Second Circuit decision in <u>Gilman v. BHC Securities, Inc.</u>, *supra*, 104
F.3d at 1431.  Its reliance on attorneys fees is objectively unreasonable given the Second
Circuit's holding in <u>Givens v. W.T. Grant Co.</u>, *supra*, 457 F.2d at 614, that precludes

20

reliance on discretionary fee-shifting statutes (this being the only type of attorneys fees

provision cited in the complaint).  Its reliance on injunctive relief is objectively

unreasonable given the overwhelming authority in this circuit which holds that the

amount in controversy is measured strictly from the plaintiff's perspective in a class

action without regard to the amount at stake for any other party.  See <u>Ada Alicea v.</u>

<u>Circuit City Stores, Inc.</u>, *supra*, 534 F. Supp. 2d at 435; see also cases cited at pp. 10-11,

*supra*.  In short, under Second Circuit case authority it was not objectively reasonable to

argue that Tombers' $20.00 claim remotely approaches the $75,000 jurisdictional

amount requirement of 28 U.S.C. § 1332(a).  Under <u>Martin</u>, *supra*, the fees required to

oppose this objectively unreasonable invocation of diversity jurisdiction are

compensable.

Equally unpersuasive is IndyMac's argument that this Court has federal

question jurisdiction.  Plaintiff's complaint is based squarely on state law and does not

arise under any federal statute.  In an attempt to circumvent this fact, defendant has

offered a frivolous claim of complete preemption by HOLA.  However, it was not

objectively reasonable to rely on this ground in the face of Justice O'Connor's statement

in <u>De La Cuesta</u> that HOLA does not displace local laws, and in the face of the strong

precedent in this district holding that HOLA does not even have "garden variety"

preemptive effect as to state consumer protection statutes.  <u>Binetti v. Washington</u>

<u>Mutual Bank</u>, *supra*.  Defendant lacked an objectively reasonable basis for claiming

complete preemption, and therefore the fees required to oppose this objectively

unreasonable invocation of federal question jurisdiction are also compensable.

<u>Conclusion</u>

For the foregoing reasons, plaintiff respectfully requests that this matter be remanded to the New York State Supreme Court and that an award of fees for each branch of the improvident removal petition be ordered.

Dated:  New York, New York
          June 30, 2008

BERNSTEIN NACKMAN & FEINBERG, LLP

By:    _____
          Roger J. Bernstein (RB 9501)
          Jeffrey S. Feinberg (JF2921)
          233 Broadway, Suite 2701
          New York, New York 10279
          Telephone:  (212) 748-4800
          Facsimile:  (646) 417-7890
          rbernstein@bnfcounsel.com

GOLDBERG, CORWIN & GREENBERG, LLP
          331 Madison Avenue, 15th Floor
          New York, New York 10017
          Telephone:  (212) 986-1000
          Facsimile:  (212) 986-8039

SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
          35 E. State Street
          Media, PA 19063
          Telephone:  (610) 891-9880
          Facsimile:  (610) 891-9883

*Attorneys for Plaintiff and the Class*

22