UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MATHEW J. TOMBERS, on behalf of himself and
all other persons similarly situated,

        Plaintiff,

    – against –

FEDERAL DEPOSIT INSURANCE CORP.,

        Defendant.

08 CV 5068 (NRB) (JCF)

**DECLARATION IN
PARTIAL OPPOSITION
TO MOTION FOR
SUBSTITUTION**

Roger Bernstein declares as follows pursuant to 28 U.S.C. § 1746:

1.  I am counsel for plaintiff in this case and am personally familiar with the facts and circumstances set forth below.

2.  Pursuant to S.D.N.Y. Rule 6.1(b), this Declaration is submitted in partial, limited opposition to the motion of the Federal Deposit Insurance Corporation ("FDIC") for substitution filed on August 1, 2008.

3.  Since defendant's motion was filed on August 1, 2008, the opposition papers thereto are due ten business days thereafter on August 15, 2008. S.D.N.Y. Rule 6.1(b).  Plaintiff has previously submitted a letter to the Court concerning the issue of a stay and the briefing schedule in this action.

4.  On August 11, 2008 the Court issued an order granting the motion for substitution, granted defendant's application for a stay, and set a briefing schedule.

However, one issue raised by the defendant's motion for substitution has not been adjudicated and this Declaration is filed with respect thereto.

<u>Procedural History & Status of the Action</u>

5.      This action against IndyMac Bank, F.S.B. was filed April 30, 2008 in New York State Supreme Court and was removed to this Court from New York State Supreme Court by the defendant on June 3, 2008.

6.      On July 11, 2008, the Office of Thrift Supervision ("OTS") (i) appointed the FDIC as receiver of IndyMac Bank F.S.B. ("Old Thrift"), (ii) authorized the issuance of a new federal banking charter to the FDIC for a new federal mutual savings and loan association ("New Thrift"), (iii) approved the transfer of "such assets and liabilities as the FDIC shall determine" to the new thrift institution, and (iv) appointed the FDIC as conservator of the new federal thrift.  See Exhibit A.

7.      The July 11, 2008 order provides for transfer of substantially all of the assets and liabilities of the Old Thrift to the New Thrift.  Specifically, it provides that the New Thrift "will have virtually the same capital and liquidity as the Old Thrift had immediately prior to the appointment of a receiver for Old Thrift.. . . " Exhibit A, at p. 4.

8.      An FDIC press release states that the name of the New Thrift is IndyMac Federal Bank, F.S.B.  See Exhibit B.

9.      On August 1, 2008, the FDIC filed a motion to substitute itself as a

2

defendant, but only in its capacity as receiver for the Old Thrift (IndyMac Bank, F.S.B.).

10.    On August 11, 2008, the Court granted the FDIC's motion for substitution as "the real party in interest".  See Exhibit C.

<u>Fed. R. Civ. P. 25(c) Transfer of Interest</u>

11.    The FDIC must be substituted herein in its capacity as Conservator of the New Thrift (IndyMac Federal Bank F.S.B.) and not solely as Receiver for the failed IndyMac Bank F.S.B.  The terms of the OTS July 11, 2008 Order (Exhibit A) make it abundantly clear that the new federal thrift, IndyMac Federal Bank, F.S.B., is the successor in interest to IndyMac Bank F.S.B.  Among other things, it now holds all of the assets of the failed institution.

12.    Substantially all of the assets and liabilities of IndyMac Bank F.S.B., the entity that was the defendant herein, have been transferred to IndyMac Federal Bank, F.S.B.  See Exhibit A, at p.4.  There are no assets remaining in the old institution for which the FDIC has been appointed receiver.  Excluding the new entity as a defendant despite the transfer of substantially all bank assets to it would leave plaintiff and the class with no recourse – and would operate as a fraud on creditors.

13.    In addition, the new IndyMac Federal Bank, F.S.B. continues to operate in violation of the same New York statutes that IndyMac Bank F.S.B. was violating.  Attached hereto as Exhibit D is an IndyMac Federal Bank ("IMFB") mortgage

3

payoff statement dated August 5, 2008 for a loan payoff transaction in New York State.

(The "Facsimile Transmission" sheet is from IndyMac Federal Bank and utilizes an

"IndyMac Bank" payoff statement form.)  This payoff statement includes a "Fax/Quote

Fee" of $20.00 – a direct violation of NY RPL § 274-a and NY GBL § 349.[1]  Thus the

illegal conduct of the failed institution continues to be a practice of the new institution.

14.      For both these reasons, plaintiff *partially* opposes the motion for

substitution of the FDIC as receiver.  We do not oppose substitution as such.  We

submit that the Court should substitute the FDIC as Conservator of IndyMac Federal

Bank F.S.B. so that complete relief can be granted with respect to the ongoing conduct at

issue here.

I declare under penalty of perjury that all statements of fact herein are true

and correct.

Dated:  New York, New York
        August 18, 2008

                                        s/ *Roger Bernstein*
                                        Roger J. Bernstein

---

[1]        The penciled arithmetic on the right margin is the payoff calculation at the closing.

4

**E X H I B I T   A**

## OFFICE OF THRIFT SUPERVISION

## Pass-Through Receivership Of A Federal Savings Association Into A De Novo Federal Savings Association That is Placed Into Conservatorship With the FDIC

**Date:  July //, 2008**

**Order No.: 2008-24**

The Director of the Office of Thrift Supervision ("OTS"), or his designee, in cooperation with the Federal Deposit Insurance Corporation ("FDIC"), has determined: (1) to appoint the FDIC as receiver for the savings association specified below ("OLD THRIFT");  (2) to approve the FDIC's request for the issuance of a new federal mutual savings association charter ("NEW THRIFT") as a successor to OLD THRIFT;  (3) to approve the transfer of such assets and liabilities of OLD THRIFT to its successor NEW THRIFT, as the FDIC has determined to be appropriate; and  (4) to appoint the FDIC as conservator of NEW THRIFT.  Collectively, numbers 2 through 4 of the foregoing are referred to herein as the "APPLICATIONS."

"OLD THRIFT," refers to:

| Name | Location | OTS No. |
|------|----------|---------|
| IndyMac Bank, F.S.B. | Pasadena, California. | 03970 |

### I.  GROUNDS FOR ACTIONS TAKEN IN THIS ORDER:

### RECEIVERSHIP; GROUNDS FOR APPOINTMENT OF FDIC AS RECEIVER FOR OLD THRIFT

The Director, or his designee, based upon the administrative record finds and determines that:

OLD THRIFT has insufficient cash and liquid assets convertible to cash necessary to pay the expected withdrawal demands of its depositors.  OLD THRIFT has suffered significant deposit outflows, exceeding $1 billion since June 26, 2008, in part because of adverse publicity.  Further, because OLD THRIFT is not well capitalized, it cannot renew its large volume of brokered deposits, which will create an additional deposit outflow.  In addition, OLD THRIFT has limited and diminishing liquidity sources available to it. There has been significant disruption in the markets for the types of assets, mortgage backed securities and mortgage servicing rights, held by OLD THRIFT.  Therefore, those

2                                                  **OTS ORDER No.: 2008-24**

assets that are not already subject to liens may not be marketable or only can be sold at prices that would result in OLD THRIFT failing to meet its capital requirements. Moreover, OLD THRIFT's mortgage servicing rights are the major source of OLD THRIFT's current earnings. In addition, the consequences of OLD THRIFT's top-tier holding company's July 7, 2008 public disclosure of adverse information, and the curtailment of forward mortgage lending and resulting downsizing, place OLD THRIFT in a precarious position and OLD THRIFT has been unable to find anyone who is willing and able to invest sufficient capital to alleviate its problems.

OLD THRIFT has suffered losses amounting to approximately $842 million from the third quarter of 2007 to the first quarter of 2008 and projects to report another $354 million loss for the second quarter of 2008. OLD THRIFT is in an unsafe and unsound condition as a result of its severe liquidity strain, deteriorating asset quality, continuing significant negative operating earnings, and declining capital with no realistic prospects for raising capital to ensure that it can repay all of its liabilities, including deposits.

OLD THRIFT has been unsuccessful in its attempts to find investors who are willing and able to recapitalize OLD THRIFT, given OLD THRIFT's current financial condition, ongoing deposit outflows, lack of liquidity, and continued asset quality deterioration. Further, OLD THRIFT projected that it would be undercapitalized as of June 30, 2008. In addition to other asset write-down's which OLD Thrift should be taking, OLD THRIFT is likely to be unable to meet its depositors' demands and other obligations in the normal course of business, and therefore, OLD THRIFT should immediately recognize additional losses on assets held for sale. The losses OLD THRIFT should recognize will result in OLD THRIFT being classified as undercapitalized. Moreover, because efforts to raise capital have proven unsuccessful, there is no reasonable prospect of OLD THRIFT becoming adequately capitalized without Federal assistance.

Therefore, the Director, or his designee, has concluded that:

(a) OLD THRIFT is likely to be unable to pay its obligations or meet its depositors' demands in the normal course of business because it does not have sufficient liquid assets to fund expected withdrawals;

(b) OLD THRIFT is in an unsafe and unsound condition to transact business due to its lack of capital and its illiquid condition;

(c) OLD THRIFT is undercapitalized as defined in section 38(b) of the FDIA, and has no reasonable prospect of becoming adequately capitalized as defined in section 38(b) of the FDIA.

The Director, or his designee, therefore, has determined that grounds for the appointment of a receiver for OLD THRIFT exist under section 5(d)(2) of the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1464(d)(2) and section 11(c)(5) of the FDIA, 12 U.S.C. § 1821(c)(5).

### TRANSFER INTO A NEW FEDERAL CHARTER:
### GROUNDS FOR ISSUANCE OF NEW FEDERAL CHARTER AND
### APPROVAL OF TRANSFER OF ASSETS AND LIABILITIES OF
### OLD THRIFT TO NEW THRIFT

The FDIC, as receiver of OLD THRIFT, has applied for authority to organize a new Federal mutual savings association, NEW THRIFT, that is to take over such assets and such liabilities of OLD THRIFT as the FDIC has determined to be appropriate, pursuant to section 11(d)(2)(F)(i) of the FDIA, 12 U.S.C. §1821(d)(2)(F)(i). The FDIC would insure the accounts of NEW THRIFT.

The Director, or his designee: (i) has considered the factors set forth in section 5(e) of HOLA, 12 U.S.C. § 1464(e), with regard to granting a new federal savings association charter, has determined that the charter should be issued, that NEW THRIFT is authorized to transact business as a savings association, and that the charter and bylaws to be issued for NEW THRIFT are in a form consistent with the material provisions of the applicable regulations; and (ii) has considered the factors set forth in section 18(c) of the FDIA, 12 U.S.C. § 1828(c), and 12 C.F.R. § 563.22 with respect to the acquisition of certain assets and assumption of certain liabilities of OLD THRIFT by NEW THRIFT. Immediate action is necessary given the seriously adverse financial condition of OLD THRIFT and in order to permit NEW THRIFT to acquire certain assets and assume certain liabilities of OLD THRIFT and continue to serve OLD THRIFT's community and customers.

For the foregoing reasons, the Director, or his designee, has determined that, pursuant to 12 C.F.R. §§ 563.22 (e) and 543.7-1, public notice of the APPLICATIONS shall not be required. In addition, the Director, or his designee, finds that OTS must act immediately in order to prevent the probable default of OLD THRIFT. Therefore, the publication of notice required by section 18(c)(3) of the FDIA, the reports on the competitive factors of the acquisition required by section 18(c)(4) of the FDIA, and the delayed consummation required by section 18(c)(6) of the FDIA, shall be dispensed with. Accordingly, NEW THRIFT may immediately acquire the assets and assume the liabilities determined to be appropriate by the FDIC.

### CONSERVATORSHIP:

### GROUNDS FOR APPOINTMENT OF FDIC AS
### CONSERVATOR FOR NEW THRIFT

The FDIC has indicated that, immediately upon the completion of the organization of NEW THRIFT (which will be federally chartered) and completion of the transfer of the aforesaid assets and liabilities of OLD THRIFT to NEW THRIFT, it will, in the exercise of its authority to act as the board of directors of NEW THRIFT pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B), consent to the OTS

4                                              **OTS ORDER No.: 2008-24**

appointing the FDIC as conservator for NEW THRIFT. Moreover, NEW THRIFT will have virtually the same capital and liquidity as OLD THRIFT had immediately prior to the appointment of a receiver for OLD THRIFT and, therefore, the grounds set forth in Section I above for appointment of the receiver for OLD THRIFT, are also applicable as grounds for the appointment of a conservator for NEW THRIFT.

## II. ACTIONS ORDERED OR APPROVED:

### APPOINTMENT OF A RECEIVER

The Director, or his designee, hereby appoints the FDIC as receiver for OLD THRIFT, for the purpose of liquidation, pursuant to section 5(d)(2) of HOLA, 12 U.S.C. §1464(d)(2), and section 11(c)(6)(B) of the FDIA, 12 U.S.C. § 1821(c)(6)(B).

### ISSUANCE OF A FEDERAL CHARTER AND APPROVAL OF THE PASS-THROUGH OF ASSETS AND LIABILITIES

The Director, or his designee, hereby approves: (1) the application of the FDIC to organize NEW THRIFT as a federal mutual savings association (and hereby authorizes the issuance of an appropriate charter and bylaws for NEW THRIFT in form and content approved by the Chief Counsel's Office); (2) the transfer of such assets and liabilities of OLD THRIFT to its successor, NEW THRIFT, as the FDIC has determined to be appropriate; and (3) the retention of the home and branch offices of OLD THRIFT by its successor, NEW THRIFT. Prior to the appointment or election of a board of directors for NEW THRIFT, the FDIC may, in addition to any other powers granted by applicable law, exercise the powers of the board of directors pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B).

### APPOINTMENT OF A CONSERVATOR FOR NEW THRIFT

The Director, or his designee, hereby appoints the FDIC as conservator for NEW THRIFT pursuant to sections 5(d)(2)(A) and (E) of the HOLA, 12 U.S.C. §§ 1464(d)(2)(A), 1464(d)(2)(E), effective upon receipt of the consent of NEW THRIFT to such appointment. That consent must be contained in a resolution of its board of directors issued by the FDIC in exercise of its power, as the organizer of NEW THRIFT, to act as its interim board of directors pursuant to section 11(d)(2)(B) of the FDIA, 12 U.S.C. § 1821(d)(2)(B).

5    **OTS ORDER No.: 2008-24**

## DELEGATION OF AUTHORITY TO ACT FOR OTS

The Director, or his designee, hereby authorizes the OTS West Region Director, or his designee, and the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to: (1) certify orders; (2) sign, execute, attest or certify other documents of OTS issued or authorized by this Order; (3) designate the person or entity that will give notice of the appointment of a receiver for OLD THRIFT and serve OLD THRIFT with a copy of this Order pursuant to 12 C.F.R. § 558.2; (4) designate the person or entity that will give notice of the appointment of a conservator for NEW THRIFT and serve NEW THRIFT with a copy of this Order pursuant to 12 C.F.R. § 558.2; and (5) perform such other functions of OTS necessary or appropriate for implementation of this Order. All documents to be issued under the authority of this Order must be first approved, in form and content, by the Chief Counsel's Office. In addition, the Director, or his designee, hereby authorizes the Deputy Chief Counsel for the Business Transactions Division of the Chief Counsel's office, or his designee, to make any subsequent technical corrections, that might be necessary, to this Order or any documents issued under the authority of this Order.

By Order of the Director of OTS, effective July _11_, 2008.

John M. Reich
Director

**E X H I B I T   B**

  Federal Deposit Insurance Corporation 

Home > News & Events > Press Releases

## Press Releases

### FDIC Establishes IndyMac Federal Bank, FSB as Successor to IndyMac Bank, F.S.B., Pasadena, California

**FOR IMMEDIATE RELEASE**
**July 11, 2008**

**Media Contact:**
**In Washington: Andrew Gray (202) 898-7192,**
**Cell: 202-494-1049**
**angray@fdic.gov**
**In California: David Barr**
**Cell: 703-622-4790**
**dbarr@fdic.gov**

En Español

IndyMac Bank, F.S.B., Pasadena, CA, was closed today by the Office of Thrift Supervision. The Federal Deposit Insurance Corporation (FDIC) was named conservator. The FDIC will transfer insured deposits and substantially all the assets of IndyMac Bank, F.S.B., Pasadena, CA, to IndyMac Federal Bank, FSB. Brokered deposits will be held by the FDIC and those insured deposits will be paid off when the insurance determination is complete. IndyMac Bank, FSB had total assets of $32.01 billion and total deposits of $19.06 billion as of March 31, 2008. As conservator, the FDIC will operate IndyMac Federal Bank, FSB to maximize the value of the institution for a future sale and to maintain banking services in the communities formerly served by IndyMac Bank, F.S.B.

Insured depositors and borrowers will automatically become customers of IndyMac Federal, FSB and will continue to have uninterrupted customer service and access to their funds by ATM, debit cards and writing checks in the same manner as before. Depositors of IndyMac Federal Bank, FSB will have no access to on-line and phone banking services this weekend. These services will be operational again on Monday. Loan customers should continue making loan payments as usual.

Beginning on Monday, July 14, IndyMac Federal Bank, FSB's 33 branches will observe normal operating hours and will continue to offer full banking services, including on-line banking. For additional information, the FDIC has established a toll-free number for customers of IndyMac Federal Bank, FSB. The toll-free

number is 1-866-806-5919 and will operate today from 8:00 p.m. to 3:00 p.m. (PDT), and then daily from 8:00 a.m. to 8:00 p.m. thereafter, except Sunday, July 13, when the hours will be 8:00 a.m. to 6:00 p.m. Customers also may visit the FDIC's Web site at http://www.fdic.gov/bank/individual/failed/IndyMac.html for further information.

At the time of closing, IndyMac Bank, F.S.B. had about $1 billion of potentially uninsured deposits held by approximately 10,000 depositors. The FDIC will begin contacting customers with uninsured deposits to arrange an appointment with an FDIC claims agent on Monday. Customers can contact the FDIC for an appointment using the toll-free number above. The FDIC will pay uninsured depositors an advance dividend equal to 50 percent of the uninsured amount.

Based on preliminary analysis, the estimated cost of the resolution to the Deposit Insurance Fund is between $4 and $8 billion. IndyMac Bank, F.S.B. is the fifth FDIC-insured failure of the year. The last FDIC-insured failure in California was the Southern Pacific Bank, Torrance, on February 7, 2003.

# # #

Congress created the Federal Deposit Insurance Corporation in 1933 to restore public confidence in the nation's banking system. The FDIC insures deposits at the nation's 8,494 banks and savings associations and it promotes the safety and soundness of these institutions by identifying, monitoring and addressing risks to which they are exposed.

FDIC press releases and other information are available on the Internet via the World Wide Web at www. fdic.gov and may also be obtained through the FDIC's Public Information Center 1-877-275-3342 or (703) 562-2200. **PR-56-2008**

Last Updated 7/14/2008                                                    communications@fdic.gov

**E X H I B I T   C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X

MATHEW J. TOMBERS, on behalf of
himself and all others similarly
situated,

                    Plaintiff,

          - v -

INDYMAC BANK, F.S.B.,

                    Defendants.

--------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-12-08

**ORDER**

08 Civ. 5068 (NRB)

          **WHEREAS** this action was initiated in the Supreme Court of
the State of New York, County of New York; and

          **WHEREAS** on June 3, 2008, defendant Indymac Bank F.S.B.
("Indymac") filed a notice of removal; and

          **WHEREAS** on June 30, 2008, plaintiff filed a motion to
remand to state court for lack of federal jurisdiction; and

          **WHEREAS** the Court had ordered that Indymac's opposition to
plaintiff's motion to remand, along with its motion to dismiss,
be due on July 17, 2008; and

          **WHEREAS** on July 17, 2008, after being informed that Indymac
had been closed by the Office of Thrift Supervision and that the
Federal Deposit Insurance Corporation (the "FDIC") had been
appointed receiver of Indymac, the Court granted an extension on

the briefing schedule for the above motions, making Indymac's opposition due August 1, 2008; and

**WHEREAS** on August 1, 2008, counsel for the FDIC moved to substitute itself for Indymac as the real party in interest and requested a 90-day stay; and

**WHEREAS** Section 1821(d)(12) of the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d)(12), provides that the FDIC is entitled to a stay of up to 90 days of any civil action or legal proceeding to which an insured depository institution, in receivership, has become a party; and

**WHEREAS** the action already has been effectively stayed for 24 days from July 17, 2008, when "by instruction of the FDIC," counsel for Indymac requested, and the Court granted, an extension of the briefing schedule, it is hereby

**ORDERED** that the FDIC's motion to substitute itself for Indymac as the real party in interest is granted; and it is further

**ORDERED** that the case be recaptioned accordingly; and it is further

**ORDERED** that the case be stayed until October 15, 2008,
that the FDIC's opposition to plaintiff's motion to remand is
due November 5, 2008, and that plaintiff's reply is due November
19, 2008.


Dated:     New York, New York
           August 11, 2008


                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

3

A copy of the foregoing Order has been mailed on this date to the following:

**Attorney for Plaintiff**
Roger J. Bernstein, Esq.
Bernstein Nackman & Feinberg, LLP
233 Broadway, Suite 2701
New York NY 10279

**Attorneys for Indymac Bank F.S.B. and FDIC**
Richard E. Gottlieb
Renee L. Zipprich, Esq.
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, IL 60606

Casey D. Laffey, Esq.
Reed Smith LLP
599 Lexington Avenue, 22nd Floor
New York, NY 10022

**E X H I B I T   D**



## Facsimile Transmission

**To:** ROBIN
Company:
   Fax: 631-366-0062
Phone:


**From:** Customer Service Department
   Fax: (269) 353-2490
 Phone: (800) 781-7399
E-mail:
Fax ID: KZ_4898753C4984

## NOTES:

Date and time of transmission: Tuesday, August 05, 2008 3:43:56 PM
Number of pages including this cover sheet: 05

IndyMac Bank
Payoff Statement                        August 05, 2008

Seanene Rejtig

41 Old Brook Road                       Loan No:    1003283690
Dix Hills NY 11746                      Investor:   711

Seanene Rejtig                          Property Address:
                                        41 Old Brook Rd
41 Old Brook Road                       Dix Hills NY 11746
Dix Hills NY 11746

THIS STATEMENT REFLECTS IMPORTANT INFORMATION OF THE Payoff PROCESS FOR
YOUR LOAN.  PLEASE READ THOROUGHLY.  *** INDYMAC BANK WILL PAY ALL
TAX AND INSURANCE PAYMENTS UNTIL RECEIPT OF Payoff FUNDS. ***

***************** STATEMENT OF ACCOUNT *********************

FOR INFORMATION PURPOSES ONLY. WE RESERVE THE RIGHT TO CORRECT ANY ERROR
OR OMISSION IN THIS Payoff QUOTE.  THIS Payoff QUOTE IS VOID AFTER
08 13 08.
     YOU MUST CONFIRM THE Payoff AMOUNT PRIOR TO REMITTING FUNDS.

Payoff as of date:  08-13-08
Next payment due: 08-01-08
The current total unpaid Principal Balance is:      $     358,668.72
Interest at  6.00000% through 08-13-08                      2,500.8
(Per day interest is $     58.96
Recording Fee                                                 61.50
Fax/Quote                                                     20.00
Demand Fees                                                     .00
Wire Fee                                                      10.00
* * * * * * * * *    TOTAL DUE By 08-13-08    * * * $      361,261.07

It Remitting by Check Deduct $10.00

Payoff funds received after 4:00 p.m. (ET) MUST include additional interest
to the next business day.

Issuance of this quote does not suspend the contract requirement to make
your monthly mortgage payments when due. A late charge of $    47.86 will
be assessed  15 days after a next payment is due (shown above) and
will be added to the Payoff total if received after that time.
If you are set up for automatic draft each month, your payment will
draft, as usual, if it is due before the Payoff funds are received.
Please notify us at least 5 days prior to your draft date if you will be
sending in the Payoff funds within that period.

These figures are subject to final verification by the Note holder.
Figures mayee adjusted if any check or money order previously received
is rejected by the institution upon which it was drawn.  To the extent
applicable, additional legal fees or costs associated with servicing
your loan may accrue daily.

It Payoff funds received are inadequate, IndyMac Bank will contact the
sender of the funds to collect the shortage.  If we cannot contact or
the remaining funds have not been collected within five (5) business
days, the original funds will be returned to the sender.  Any overage of
funds (including escrow) will be returned to the mortgagor fifteen (15)
business days after the Payoff date. To the extent permitted by state
law, the Note Holder reserves the right to withhold the issuance of the
satisfaction of mortgage until it receives all funds owed under the

terms of your Note. We reserve the right to use available escrow funds
to offset the amount of the returned item.

Please WIRE Payoff funds to:
                    JP Morgan Chase (Dallas, Texas)
                    ABA Routing No. 111000614
                    MRC Account No. 0639262971
                    Beneficiary: IndyMac Bank Payoff Clearing
**Please reference the Customer Name, Loan Number and Property Address to
avoid any delays in processing. **

Any funds not wired must be sent as certified funds (non-certified
funds will be returned) and a copy of the Payoff statement to the
following address:
                    IndyMac Bank, Home Loan Servicing
                    6900 Beatrice Drive
                    Kalamazoo, MI  49009-8070
                    Attn: Mortgage Payoffs
Funds not wired must include per diem interest to allow for mail or
delivery time.  (Funds submitted to any other address could delay Payoff,
causing additional interest to accrue.)

If you have any questions about wiring or remitting the Payoff funds,
please contact us at 1.800.781.7399.

                    SEE ATTACHED INSTRUCTION SHEET
NOTE: If this property is being sold, please provide us with a valid
mailing address for the seller (our customer).

XP001 131 10C

Important Instructions!  Please Read!

Payoff Funds:

Personal check will NOT be accepted for payoff balance.  We reserve the
right to correct any error or omission in payoff quotes.  To ensure your
payoff figures have not changed since your payoff statement was issued YOU
MUST obtain a verbal verification 24 hours prior to submitting funds.
Payoff funds must be sufficient for payoff on the business date received at
Indymac Bank, Home Loan Servicing Payoff Department.  (By 5 PM Eastern
Time, Monday - Friday).  If payoff funds are not sufficient for payment in
full, the amount needed will be taken from escrow if available.  If funds
are not available, the payoff will not be processed until we receive the
full payoff balance.

Wire Funds to:

                 JP Morgan Chase (Dallas, Texas)
                 ABA Routing #111000614
                 Account #0839262971

When wiring funds for payoff, please reference our loan number and
borrowers name(s) and provide a contact name, phone number and address.
This will enable us to contact you promptly in the event the payoff funds
are not sufficient to pay the loan in full.

Payments that are not remitted in accordance with the foregoing
instructions shall not be considered proper tender of consideration.
IndyMac Bank reserves the right to refuse processing of any payment not
made in accordance with these instructions.

Cooperative Loans:

For payoff of a Cooperative loan, other means of information are required.
If this is a Cooperative loan you need to inform us by contacting
1-800-781-7399 ext. 2470.  A stock certificate and proprietary lease are
involved and it is a lengthy process to get that information.  Please
provide two (2) to three (3) weeks notification.  Thank you for your
cooperation.
Escrow Accounts:

The escrow balance is subject to audit and may change due to payments or
disbursements prior to payment in full.  Any balance remaining in escrow
will be refunded approximately three (3) weeks after payoff.

We will continue to disburse escrow/impound funds for the payment of
taxes, insurance or PMI as bills become due, up to the date payoff funds
are received.  It is critical that you verify final payoff figures to
obtain a correct escrow balance.

Taxes, Insurance, Year End Statements, Mortgage Release:

You should contact your taxing authority and insurance company to ensure
that you receive future bills and verify payment status.  Future payments
will be your responsibility.  We will notify the taxing authority and
insurance company that we no longer have an interest in this property.
(This does not apply if you are refinancing with Indymac Bank, Home Loan
Servicing.)

Please provide us with a forwarding address.  To ensure proper delivery of
your year end statement, appropriate release documents, and escrow refund
check (if applicable).

Mortgage Payments:

Issuance of a payoff statement does NOT suspend the contract requirement to make mortgage payment when due.  You are obligated to provide payments when due to avoid late fees.  Payoff quotes and demands do not reflect late charges until they have been assessed.  You must include assessed late fees with payoff funds.  In the event a payment is made after the payoff statement is issued, do not stop payment on check.  Any overpayment will be refunded to you approximately three (3) weeks after payoff with any escrow overage.

AUTOMATIC DRAFT - We must be notified 6 days prior to payment draft date to stopdrafting, if you intend to pay the loan off before your scheduled draft date.

For further assistance you may contact Indymac Bank, Home Loan Servicing at 1-800-781-7399.  Representatives are available to assist you from 8:00 AM to 9:00PM Eastern Time, Monday through Friday.